M. L. WEISS, INC., a Domestic Corporation, Plaintiff, *v.* GROVER A. WHALEN, as Police Commissioner of the City of New York, and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, Ninth District, December 2, 1929.

*J. J. & A. L. Weiss*, for the plaintiff.

*Arthur J. W. Hilly, Corporation Counsel* [*Martin H. Murphy* of counsel], for the defendants.

GENUNG, J.   The plaintiff left its automobile at the curb on West Thirtieth street, about fifty feet from the corner of Fifth avenue, unattended and unoccupied, from about ten o'clock in the morning until six o'clock in the afternoon, on April 8, 1929.   This parking of the car for a period of time in excess of one hour constitutes a violation of the parking regulations of the police commissioner, who has exclusive control over the vehicular traffic and may make appropriate rules in relation thereto.   (Greater New York Charter [Laws of 1901, chap. 466], § 315, as amd. by Laws of 1914, chap. 455; Code of Ordinances, chap. 24, § 42.)

At about four-thirty in the afternoon the police officer on post, who had this automobile under observation, notified the street cleaning department, and about six P. M. officials of that department removed the automobile as an incumbrance in the street, pursuant to the provisions of subdivision 2 of section 152 of chapter 23 of the Code of Ordinances of the City of New York, authorizing such removal of obstructions from the public streets.

The said ordinance, in subdivision 3 thereof, provides for a judicial proceeding in the Municipal Court, to be instituted by the street cleaning commissioner, upon notice to the owner of the offending vehicle, for the purpose of obtaining a final order directing the sale of the property so removed from the public streets, and the application of the proceeds of such sale towards the payment of the cost and expenses incurred by the commissioner in connection with the proceeding and the sale, and in addition thereto " such an amount for each incumbrance seized or taken, condemned and sold, as hereinbefore provided, not to exceed $10, as may be estimated  and  fixed  by  the  commissioner  of  street cleaning as necessary to pay the cost of seizing, removing and keeping or storing such incumbrances; and the remainder of the moneys realized from such sale shall be paid without interest, to

lawful owners of the several articles sold." (Greater New York Charter, § 545; Code of Ordinances of the City of New York, chap. 23, § 152, subds. 2, 3.)

The said ordinance further provides in the next subdivision thereof as follows:

" 4. Redemption of property removed. The owner of any truck, cart, wagon, vehicle, box, barrel, bale or other thing, removed from any public street or place, under the provisions of this section, may redeem his property at any time after its removal, upon payment to the commissioner of street cleaning of such sum as he may fix, not to exceed $10, for each article redeemed. The sum thus paid shall be immediately transmitted to the comptroller, and shall be by him added and credited to the appropriation for the department of street cleaning, and may be used by the commissioner for any of the purposes of his department, as if originally included in the appropriation therefor. Nothing in this section contained shall be deemed to authorize the summary removal of materials for any public work or improvement in the course of construction."

The plaintiff in this action paid the sum of ten dollars to the commissioner of street cleaning, and recovered its automobile as permitted by the subdivision of the ordinance just quoted. It now claims in this action that the said amount was paid under protest, and that it was illegally collected, in that the said ordinance, by virtue of which the plaintiff was compelled to pay the said sum, is unconstitutional; that the action of the commissioner thereunder constitutes an illegal and unwarranted assumption of judicial power; and that the plaintiff has been deprived of its property without due process of law; in violation of both the State and Federal Constitutions. (U. S. Const. 14th Amendt. § 1; N. Y. Const. art. 1, § 6.)

It has been said by the Court of Appeals that it is difficult to define with precision the exact meaning and scope of the phrase " due process of law." " Any definition which could be given, would probably fail to comprehend all the cases to which it would apply. It is probably wiser, as recently stated by Mr. Justice MILLER of the United States Supreme Court, to leave the meaning to be evolved ' by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.' " (EARL, J., in Stuart v. Palmer, 74 N. Y. 183, 191.)

We are dealing here with an ordinance permitting the removal from the busy and congested streets of New York city of what is in effect deemed a public nuisance, and providing for a judicial

proceeding after such removal, wherein the owner may be heard, and his rights determined. The proceeding outlined by the ordinance is an action vested in the street cleaning commissioner for the purpose of making disposition of the property which had been removed, and applying the proceeds of the sale after due notice to the owner. That proceeding, however, is not exclusive, and the owner is free to prosecute any form of action that he may be advised, to recover his property or to obtain any other form of redress. Subdivision 4, which is entitled " Redemption of property removed," is merely permissive and affords the owner the choice of redeeming his property without any judicial proceeding, upon the payment by him of a sum not exceeding ten dollars to be fixed by the commissioner of street cleaning. It is evident from a reading of subdivisions 3 and 4 of section 152 of the ordinance that the sum so required to be paid is not in the nature of a fine or a penalty, which would of necessity require judicial determination, but is intended to reimburse the street cleaning department for the necessary and reasonable expense involved in the removal of the property, and its storage prior to its redemption by the owner.

It is claimed, moreover, that the exaction of a sum fixed by the commissioner at or below the maximum of ten dollars, stipulated in the ordinance, constitutes a violation of constitutional rights, and is a deprivation of property without due process of law, because the ordinance permits of arbitrary action on the part of the commissioner in fixing the sum to be paid. It will not be presumed, however, that a public official will perform his functions improperly and arbitrarily, and if he should do so, the law will afford a remedy. Assuming an infraction of the police regulations justifying an abatement of the nuisance by its removal, it is a proper and reasonable exercise of the police power to provide for the repayment of the expenses entailed as a condition for the return of the property, rather than put the municipality to the necessity of instituting an action to obtain a judicial determination of the amount owing for the expenses of such removal. In the great majority of cases, the necessity of such an action would entail an unnecessary burden, both upon the city and the owner of the car, who might be deprived of the use of his car until there was such a determination.

On the other hand, in the rare instances such as referred to by plaintiff in its brief, of an innocent owner whose car has been stolen and left parked by the thief, or where there might be arbitrary and unjustifiable action by the commissioner, the owner may in a suitable action obtain appropriate redress. This ordinance is for the benefit of the owner who does not wish to suffer the delay attendant upon a judicial proceeding. It does not deprive him

of any constitutional rights. He may still avail himself of a judicial hearing. The plaintiff has in fact availed himself of his right to a judicial hearing by bringing this action, but has shown no facts to exempt him from the consequences of the violation of the ordinance. He has admitted the facts, but assails only the constitutionality of the ordinance. The authorities amply sustain the constitutionality of the ordinance.

" Instances are numerous of the passage of laws which entail expense on the part of those who must comply with them and where such expense must be borne by them without any hearing or compensation because of the provisions of the law." (PECK-HAM, J., in *Health Department* v. *Rector*, 145 N. Y. 32, 43.)

In the same case, speaking of the limitations upon private property imposed by the proper exercise of the police power of the State, the court said: " These exactions must be regarded as legal so long as they bear equally upon all members of the same class and their cost does not exceed what may be termed one of the conditions upon which individual property is held. It must not be an unreasonable exaction either with reference to its nature or its cost. Within this reasonable restriction the power of the state may, by police regulations, so direct the use and enjoyment of the property of the citizen that it shall not prove pernicious to his neighbors or to the public generally. The difference between what is and what is not reasonable, frequently constitutes the dividing line between a valid and void enactment by the legislature in the exercise of its police power."

The mischief which the ordinance was intended to remedy is one that had fallen under the cognizance of the courts long before its enactment. In *Cohen* v. *Mayor of City of New York* (113 N. Y. 532) the court said: " The storing of the wagon in the highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose, under temporary exceptions as to deposits for building purposes, and to load and unload wagons, and receive and take away property for or in the interest of the owner of the adjoining premises, which, it is not now necessary to more specifically enumerate."

The propriety and reasonableness of the remedy provided for by this ordinance is clearly justified under the reasoning of the court in *Colon* v. *Lisk* (13 App. Div. 195; affd., 153 N. Y. 188), wherein the court said: " It is the established doctrine of these cases that it is no objection to such legislation that the property forfeited is innocent and harmless of itself, or that the owner may

not have consented to its use for the unlawful purpose. The right exists in the Legislature to declare it a nuisance and, in some cases, direct its summary destruction without judicial process. * * * Assuming it to be a fact that an innocent owner may suffer, does not necessarily render such a statute unconstitutional. * * * It is settled law that a temporary seizure of property without process, to be held to await subsequent judicial action in respect thereto, violates no provision of the Constitution."

In the case of *Colon* v. *Lisk* (153 N. Y. 188) the statute under consideration was held unconstitutional as class legislation and as amounting to an oppressive and unauthorized confiscation of private property for the mere protection of private rights. The court said (at p. 198) that the statute under consideration in no manner attempted " to protect any public interest, or defend any public right. Nor is it calculated to accomplish that end, but under the guise of a pretended police regulation, it arbitrarily invades personal rights and private property." The court, however, recognized the validity generally of legislation intended to protect the public interest in the following language: " It is within the province of the Legislature to determine what laws are needed for the protection of the public, and so long as its measures are calculated and appropriate to accomplish that end, its discretion may not be reviewed by the courts." (P. 196.)

The case of *Lawton* v. *Steel* (119 N. Y. 226; affd., 152 U. S. 133, 137, 138) is ample authority for sustaining the validity of the ordinance which is here under consideration. The statute in the *Lawton* case declared that any net found in or upon any of the waters of this State, or upon the shores or islands in any waters of this State, in violation of any existing or hereafter enacted statutes or laws for the protection of fish, a nuisance, and authorized its summary abatement and destruction by any person, and made it the duty of every fish protector and constable to seize and remove and forthwith destroy the same. The court said:

" The act in question declares that nets set in certain waters are public nuisances, and authorizes their summary destruction. The statute declares and defines a new species of public nuisance, not known to the common law, nor declared to be such by any prior statute. But we know of no limitation of legislative power which precludes the legislature from enlarging the category of public nuisances, or from declaring places or property used to the detriment of public interests or to the injury of the health, morals or welfare of the community, public nuisances, although not such at the common law," and (at p. 235):

" It is insisted that the destruction of nets by an individual,

or by an executive officer so authorized, without any judicial proceeding, is a deprivation of the owner of the nets of his property, without due process of law, in contravention of the Constitution. The right of summary abatement of nuisances without judicial process or proceeding, was an established principle of the common law long before the adoption of our Constitution, and it has never been supposed that this common-law principle was abrogated by the provision for the protection of life, liberty and property in our state Constitution, although the exercise of the right might result in the destruction of property. * * *

" ' The acknowledged police power of a state often extends to the destruction of property. A nuisance may be abated. Every thing prejudicial to the health and morals of a city may be removed."

" These authorities sufficiently establish the proposition that the constitutional guaranty does not take away the common-law right of abatement of nuisances by summary proceedings, without judicial trial or process." (P. 237.)

Judgment is, therefore, rendered in favor of the defendants dismissing the complaint, with costs.