Allen Murray Myers, J.
Plaintiff sues the City of New York in the Small Claims Part of the Civil Court to recover the sum of $167.73, damages he claims to have sustained as a result of the negligence of the city in attempting to tow his illegally parked motorcycle.
From the testimony the court finds the following facts: On October 31, 1966, plaintiff parked his motorcycle on the south •side of 51st Street, west of Sixth Avenue, in a tow-away zone. The motorcycle was a new Honda model 450. After parking, plaintiff and a friend departed for about 30 minutes.
During that interval, at about 5:30 p.m., another friend, Michael Meltzer, arrived at the site to keep an appointment with *623 plaintiff. While waiting, he observed plaintiff’s motorcycle being lifted onto a city tow truck. He saw that it was being lifted by a hook and chain which was slung around its body in the area of its gas tank; that it was not being held fast and that nothing was being done to prevent the motorcycle from swinging into and striking the tow truck with “ good force ” at least three times.
Plaintiff and his friend returned in time to see the dangling motorcycle, supported only by the hook and chain, just as it was being lowered into the bed of the tow truck. Upon plaintiff’s request, the motorcycle was manually lifted down from the truck and returned to him. Plaintiff received a ticket for illegal parking, which he subsequently paid.
At this point plaintiff noticed some damage to his motorcycle which he brought to the attention of the police officer at the scene, who .suggested that he file a claim with the Comptroller’s office, which he did.
Both plaintiff and the city offered expert testimony as to how a motorcycle should be lifted onto a truck. The experts agreed that a chain should not be used; that the binding should be a cable, strap or net put around the cycle so as not to do damage, and that precautions should be taken to prevent the cycle from swinging into the body of the truck.
The testimony revealed that although the city contemplated towing away motorcycles and had experts who knew how to tow them, it never instructed this particular tow truck crew as to the proper way to tow a motorcycle. Furthermore, this was the first motorcycle this crew had ever towed, and their lack of training was clearly demonstrated by the way they lifted it.
The court therefore finds that plaintiff’s damages were caused solely by the negligence of the city, and that the plaintiff was not guilty of contributory negligence by virtue of violating a traffic regulation since that violation was not the proximate cause of the damages. (Cole v. Swagler, 308 N. Y. 325; O’Neill v. Hamill, 22 A D 2d 691.) While the city was authorized to tow away illegally parked motor vehicles, it had to do so in a reasonably prudent manner under the circumstances. The authority to tow did not give the city the license to destroy by neglect or otherwise.
The City of New York was specifically authorized to regulate traffic within its boundaries by sections 1640 and 1642 of the Vehicle and Traffic Law which included the regulation of parking. This regulation of traffic has been upheld as a valid exercise of the police powers of the State. (People v. Rubin, 284 N. Y. 392 ; M. L. Weiss, Inc. v. Whalen, 135 Misc. 290.) In addition, subdivi *624 sion b of section 1204 authorizes the towing away of vehicles illegally parked.
At common law the State was immune from suit when it was derelict in the performance of governmental functions such as the exercise of police powers. However, New York State has specifically abrogated the common-law distinction between the governmental and proprietary functions of the State by section 8 of the Court of Claims Act, which states: 1 ‘ The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ”.
The effect of the waiver was to make both the State and its political subdivisions liable (Becker v. City of New York, 2 N Y 2d 226; Bernardine v. City of New York, 294 N. Y. 361). Such waiver applies to the sovereign the same test of liability as would be applied to an individual or private corporation if it were obligated to discharge the governmental function. (Becker v. City of New York, supra; Schuster v. City of New York, 5 N Y 2d 75; Runkel v. City of New York, 282 App. Div. 173.)
In an action predicated on negligence, such as this, the law imposes a duty to act in a reasonably prudent manner under the existing circumstances. The standard of care remains constant. Only the circumstances vary. (2 Harper and James, Torts, p. 945, § 16.13.) The courts have rejected attempts to except the exercise of police powers from the operation of this rule. Exigencies requiring action serve only to define what is reasonable under the circumstances.
•- Thus in Meistinsky v. City of New York (309 N. Y. 998) a policeman shot at two holdup men, accidentally killing plaintiff’s intestate. Proof that the police officer had training only in shooting at .stationary targets and had no training in rapid firing with small arms was held to be evidence of negligence. (Cf. Dunham v. Village of Canisteo, 303 N. Y. 498.)
Even the discretionary administrative actions of police officers may give rise to liability for negligence. Thus a cause of action was stated upon an allegation that the police returned a pistol to an individual who had no license therefor when the police had knowledge that he had previously threatened to shoot plaintiff and others. (Benway v. City of Watertown, 1 A D 2d 465.)
Similarly, in McCrink v. City of New York (296 N. Y. 99) a policeman, while intoxicated and off duty, shot plaintiff’s intestate. Previous complaints had been made about the policeman’s intoxication, and the officer had been warned and disciplined by *625 the Police Commissioner. There was testimony that a patrolman is required to carry a revolver at all times, and that a revolver in the hands of an intoxicated person is dangerous. The court held that the statutory authority of the Police Commissioner to dismiss a policeman is discretionary, but that such discretion is limited by the State’s waiver of immunity so that one known to be potentially dangerous to others may not be retained in service.
In the case at bar the city has argued that “the plaintiff’s vehicle at the time and place where it was parked constituted a hazard to traffic and danger to the public health, safety and welfare,” and that the removal of the vehicle was reasonable “in view of the fact that such vehicle was being removed on a weekday during heavy rush hour traffic in midtown Manhattan.”
The court is well aware of the inextricable midtown traffic situation and commends the city on its tow-away program and on the success which it has achieved in alleviating this irksome problem.
Undeniably midtown traffic is very heavy at the hours involved herein. However, there was no showing by the city that such an emergency existed as would justify a departure from the ordinary reasonable and proper manner of towing a vehicle.
To justify the city’s acts herein, there would have to have been a showing of a specific emergency beyond the generally difficult traffic situation which the statutes envision. Thus if the motorcycle had caused a serious traffic jam, prevented an ambulance, fire truck or other emergency vehicle from passing, or otherwise created an imminent danger to life, limb or property, it would have been incumbent upon the city to call upon all means to remove the vehicle as quickly as possible under the circumstances, and the reasonable maimer of acting might have been different. But that is not the case here. As a matter of fact, plaintiff’s motorcycle was parked between the sidewalk and a parked Con Edison storage bin, thus creating no greater obstruction than the Con Edison bin itself.
The effect of permitting the negligent towing of cars with its consequent property damage would be an imposition of unequal and indeterminable punishment, even though unintentional, on some individuals while exempting others — an imposition without legislative fiat, without a judicial determination as required by due process and in violation of the constitutional requirement of equal protection under the laws. Thus the delicate balance between serving the public need and preserving private interest would be upset.
Plaintiff has argued that the towing statute itself is unconstitutional. In fact, thát issue has no relevancy to the case at *626 bar because the requirement of care imposed on the city remains constant, regardless of the constitutionality of the statute, and the court finds it unnecessary to pass upon that question.
The court notes in passing, however, that a strong presumption of constitutionality 11 attaches to every statute enacted by the Legislature ”. (Matter of Fay, 291 N. Y. 198, 207; see, also, Paterson v. University of State of N. Y., 14 N Y 2d 432; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537.)
This court cannot concern itself with the contention that this decision may encourage a multiplicity of lawsuits, since its function is to do justice under the law. This concept was clearly expressed by Judge Burke in Battalla v. State of New York (10 N Y 2d 237, 240-241) when he wrote: 11 We presently feel that even the public policy argument is subject to challenge. Although fraud, extra litigation and a measure of speculation are, of course, possibilities, it is no reason for a court to eschew a measure of its jurisdiction. ‘ The argument from mere expediency cannot commend itself to a Court of justice, resulting in the denial of a logical legal right and remedy in all cases because in some a fictitious injury may be urged as a real one.’ (Green v. Shoemaker & Co., 111 Md. 69, 81.) ” (See, also, Schuster v. City of New York, 5 N Y 2d 75.)
Moreover, anyone concerned with the problem of opening the floodgates of litigation should be ever mindful of the observation of Judge Crane in Dougherty v. Equitable Life Assur. Soc. (266 N. Y. 71, 88) where he stated: “ The language of any opinion must be confined to the facts before the court. No opinion is an authority beyond the point actually decided, and no judge can write freely if every sentence is to be taken as a rule of law separate from its association.”
Plaintiff has proved by a fair preponderance of the credible testimony that he sustained damages of $117.73, the fair and reasonable value of the necessary repairs to his motorcycle. Plaintiff’s claim for $50 loss of income has not been sustained and is therefore disallowed.
Let there be judgment in favor of plaintiff against the defendant in the sum of $117.73.