BYRON G. VAN HORNE v. DAVID BROWN ET AL.

Argued December 4, 1913—Decided March 4, 1914.

Section 10 of the act concerning distress gives an action on the case
     for treble damages and costs to the person aggrieved by a pound
     breach or rescous. *Held*, that where goods are impounded as at
     common law, or are otherwise secured by the distrainor, as re-
     quired by the statute, and a pound breach takes place, the pro-
     visions of the statute apply, and the plaintiff, upon proof of the
     statutory requirements, is entitled in the absence of any proof of
     substantial damage to recover at least nominal damages.

On appeal from the First District Court of Bergen county.

Before Justices GARRISON, TRENCHARD and MINTURN.

For the plaintiff, *Adolf L. Engelke.*

For the defendant, *Mackay & Mackay.*

The opinion of the court was delivered by

MINTURN, J.    The suit was for treble damages under the
ninth and tenth sections of the statute concerning distress
for rent.    The case was tried before the court without a
jury, and judgment was given for the defendant.    The state
of the case shows that one Melita, being a tenant in possession
of a store in the city of Englewood, was indebted to his
landlord, the plaintiff, for rent; that a warrant of distress
was issued against the tenant and delivered to a bailiff to
execute.    The bailiff, with another person, entered upon the
premises and made an inventory of the tenant's goods, and
left a copy of the inventory and a notice of the distress with
a person in charge of the premises, who subsequently de-
livered it to the tenant.

Ten days thereafter the defendants and the tenant under-
took to remove some of the fixtures distrained upon, and the
bailiff entered and was informed by defendant that such was

their purpose. They were then informed of the pending distress proceeding, and notified to desist in their purpose of removal. The next day defendants claiming the right under their chattel mortgage removed the goods.

There was put in evidence a chattel mortgage executed by Melita, the tenant, to one of the defendants for $100, and a second mortgage to the plaintiff for $44, covering the goods in question. There was no testimony adduced to show the value of the goods distrained upon, or of any damage suffered by plaintiff by reason of the removal of the goods from his possession, except the non-payment of the rent due.

It seems to us quite obvious that the trial court treated the failure of the plaintiff to show the value of the goods distrained as a justification for the judgment rendered. We think this was erroneous, and that the statute having given to the plaintiff a special action upon the case for the wrong sustained, he was entitled to at least nominal damages, in the event of his failure to prove substantial damages, upon which the penal damages prescribed by the tenth section of the statute could be predicated.

The statute (2 *Gen. Stat., p.* 1209) awards the damages to the distrainor, where it appears as the court apparently has found in this case, that there was in the language of the statute either a "pound breach" or a "rescous." Since the trial court based its judgment upon the plaintiff's failure to prove substantial damages, we must assume that if such proof had been provided the court would have found what from the state of the case seems to us manifestly assumed, that there was a pound breach, and necessarily that the goods had been legally impounded, or otherwise secured; for without such legal impounding or its equivalent, the statutory remedy for treble damages cannot accrue. *Newell* v. *Clark,* 17 *Vroom* 378.

The briefs discussed at some length the question of impoundment, upon the theory obviously that the mere act of legal impoundment transferred a title in the property to the distrainor. But the whole concept of distress in our jurisprudence is a survival of the feudal procedure of self-help,

by which the possession only of the goods distrained was recognized as equivalent to a pignus or pledge, held as a substitute for the payment of a valid debt. After their impoundment the goods ceased to be in the possession of the distrainor, but became *in custodia legis. Rex* v. *Cotton, Parker* 112.

Having neither property nor possession at common law the distrainor could bring neither trespass nor trover against one who seized the distress while in process of impounding, or who broke and entered after the impounding had been effectuated. The only remedy supplied by parliament was of a *quasi* criminal nature, by writ of rescous, or a writ for pound breach. *De parco facto.* 2 *Y. B. Hen.* 7, *p.* 1.

To secure the distrainor personally for his claim the statute (2 *W. & M., c.* 5) imposed treble damages for "any pound breach or rescous," and the statute (11 *Geo. II., c.* 19, § 10) extended to the method of impounding, so as to enable the distrainor to have the distress "otherwise secured," than by depositing it in the common pound.

Our statute quite manifestly is a consolidation of the two English statutes into a concrete enactment to effectuate the same result.

The effect and purpose of the statute of George II. was to obviate the necessity of compelling the distrainor to take the goods distrained to the common pound, which very often in the course of his progress afforded the occasion for a "rescous" and a riot, and thus disturbed the public peace. *Maine's Hist. Just.* 263.

The questions therefore for determination in the case *sub judice,* are whether the distress was impounded or "otherwise secured," as this court defined that language in *Newell* v. *Clark, supra,* and what the damages of the plaintiff are, measured and defined in the language of Mr. Justice Depue in that case, by what the plaintiff "might have realized out of their distress, which was wrongfully interrupted" by the defendants' tortious act.

The judgment will be reversed, and a *venire de novo* issued.