Bergan, J.
On October 24, 1967 a motor vehicle, which had been hired by defendant and had been earlier parked by him on the north side of West 45th Street between Eighth and Ninth Avenues, was found by police to be illegally parked shortly after 8:00 a.m. and a summons was attached to the windshield.
All parking was prohibited at this point between 8:00 a.m. and 9:00 a.m. Signs stating this was a “ tow-away ” zone were prominently displayed. There were parking meters on the street which could be used after 9:00 a.m., but between 8:00 and 9:00 the restriction against any parking was complete.
At about 8:30 a.m. a police department tow truck removed the car to a police department storage facility. The New York statute authorizing the tow-away procedures of the city, section 1204 (subd. [b], par. 1) of the Vehicle and Traffic Law, provides, among other things, that when a police officer finds a vehicle unattended at a place where parking is prohibited he is authorized to have it removed “ to a garage, automobile pound or other place of safety ”.
At the police storage facility the policeman examined the inside of the car and observed a black plastic brief case which he found contained a loaded pistol. Defendant claimed the car *71 and has been indicted for possessing a loaded gun as a felony. The court at Special Term suppressed the. evidence and dismissed the indictment on the ground the discovery of the gun was by an unlawful search. The Appellate Division affirmed and the People appeal.
The police department regulations governing tow-away procedures required that the officer removing a vehicle make an adequate record in his official memorandum book of valuable property in the car. The officer receiving the vehicle in the storage area is required to ‘ ‘ check same to see if there is any valuable property in said vehicle ” and to verify and sign the towing officer’s memorandum book.
Valuable property that is found must be delivered to the patrol precinct (Police Operating Procedure No. 20). There are additional procedures relating to filing of claims by owners “ arising from the Tow-Away Program ” (id., No. 20-2).
It is manifest that in inspecting vehicles they take into their custody, in the absence of drivers, the police are not seeking evidence of crime but are pursuing precautions which any bailees of personal property would be expected to take as a matter of reasonable care for the benefit of the absent owner of the vehicle and as a safeguard against claims of loss or damage which could be alleged against the city (Simon v. City of New York, 53 Misc 2d 622; New York City Charter, § 435, subd. a).
That the tow-away program is based on a need to keep open the flow of traffic in the streets of central Manhattan, and not on discovery of evidence of crime, is suggested by the massive volume of vehicles removed from the streets.
In 1969 alone 108,332 cars were towed away at the rate of 2,000 a week. This statistical material based on published compilations and police department reports is brought together in the People’s brief and is not disputed. The number of tow trucks in use grew from 17 in 1967 to 80 in 1969 (1967 Annual Report of N. Y. City Police Dept. 26; 1969 Report 23).
If evidence of crime is discovered, it is the merest peripheral incident to custody in such a vast program; and assuming the custody itself to be lawful, as it is by both sides in this case, then thorough examination of the car in such custody for the protection of both owner and custodial bailee is not an “ unreasonable ’ ’ *72 search but by any standard reasonable within the Fourth Amendment.
A motor vehicle has been afforded some of the protections against “ unreasonable ” searches that traditionally were allowed to a man’s home. Yet the vehicle is still a chattel. Given its high mobility it may be left by the owner in places where its presence conflicts with public and private rights of others; and what may be done with it by public authority depends ultimately on a balancing of conflicting community and personal interests.
When a man willfully leaves a car unattended under a ‘ ‘ tow-away ’ ’ sign through a time and at a place where all parking is prohibited, and in a city where removal of vehicles for the safety of streets is so widespread and so thoroughly publicized as in New York City, he is not far from risking its abandonment to removal, or indeed from an open invitation to authorities to remove it.
He could not reasonably expect the police to leave a brief case in open sight in the storage facility or expect that they would not make sure when they took control of the brief case what it contained and record its contents.
All the cases dealing with this subject allow the opening of the vehicle and inspecting of the interior. The inspection of its contents is a matter of close degree and not a matter of constitutional differentiation as to what is reasonable. The ‘ ‘ reason for and nature of the custody may constitutionally justify the search ” (Cooper v. California, 386 U. S. 58, 61).
Neither the Supreme Court nor this court has held that properly discovered evidence is to be excluded where the process of examination and disclosure falls short of a constitutionally prohibited search. Much of the discussion in Federal and State courts on the use of evidence uncovered in the course of an inventory listing and inspection of things found in a vehicle of which the police have taken lawful custody has been addressed to analysis of three cases in the Supreme Court: Harris v. United States (390 U. S. 234 [1968]); Cooper v. California (386 U. S. 58 [1967], supra), and Preston y. United States (376 U. S. 364 [1964]).
Not any of these cases is concerned with quite the same kind of custody which the New York police undertook of defendant’s car in this present case as implementing a general municipal policy to make possible the movement of traffic and entirely remote *73 from the prosecution of defendant or anyone for any criminal offense or for the search for evidence of a criminal offense; but the cases throw light on the unlawful search and seizure argument which defendant makes.
In Harris defendant’s car had been seen leaving the scene of a robbery in the District of Columbia. He was traced through identity of the car and when he was arrested the car was impounded as evidence. The regulations of the Metropolitan Police Department required that when a car was impounded it must be searched “ thoroughly ” and “ all valuables ” must be removed “ from it ” (390 U. S., p. 235).
Opening a door of the car after it was impounded and looking inside a policeman found a registration card on the metal stripping over which the door closed. The card was found admissible. ‘ ‘ The sole question * * * is whether the officer discovered the registration card by means of an illegal search. We hold that he did not ” (Per Curiam, p. 236).
The court’s statement which immediately follows, summarizing the constitutional question, seems of large significance in inventory searches of the kind considered in this present case; it having been found by the District Court that the discovery of this evidence “ was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody ”, a warrant for the search of the vehicle was not necessary under the Fourth Amendment (p. 236). Justice Douglas, concurring (pp. 236-237), felt the decision was consistent with Preston v. United States (376 IT. S. 364, supra).
In Cooper v. California (386 U. S. 58, supra) the accused had been arrested and charged with a narcotics violation. A car which he had used for narcotics was seized “ as evidence ” by police under California law which permitted such a car to be “ held as evidence ” until forfeiture had been declared or the car ordered released. A week after the arrest of the accused and seizure of the car, police made a thorough search of it and, opening up a glove compartment, took out evidence (of drugs) which was used against the accused.
Justice Black here noted that it would be unreasonable to hold that the police, having to retain the custody of the car for a considerable time before forfeiture under the statute, “ had no right, even for their own protection, to search it” (386 U. S., *74 pp. 61-62). The search occurred a week after the arrest. The court concluded that it could not ‘ ‘ hold unreasonable under the Fourth Amendment” the “examination” or “search” of a car “ validly held by officers ” for use as evidence (p. 62).
In Preston v. United States (376 U. S. 364, supra) petitioner and two others were arrested for vagrancy while sitting in a car. Police had the car towed to a garage and there searched it, turning over evidence discovered through this search to Federal authorities. The evidence was used by the Government. The search was held unlawful, primarily over the argument of the Government that it was an incident to a lawful arrest (p. 367).
It was concluded that this search at another place was not an “ incident ” to arrest (p. 367). Of course, the Preston problem is far different from the question in the present case, and the court was later careful to distinguish it from the similarly different grounds for police control of the vehicles in Cooper and Preston was not even referred to in the court’s main opinion in Harris. There can be little doubt that Harris and Cooper sharply limited, and excluded from the lawful impounding cases, the effect of decisions such as Preston.
The Supreme Court of California, which also had held the discovery of the Cooper evidence was in violation of the Fourth Amendment, has taken a more restricted view than these Federal cases suggest to be necessary under the Fourth Amendment of the right of police in that State to search a vehicle lawfully impounded under California law (Mossetti v. Superior Ct., 4 Cal. 3d 699 [1971]).
Defendant while driving her car was injured in an accident and taken to a hospital. The police, determining that the car was in a position blocking the road, had it taken in their custody to a garage. They had statutory right to do this under these facts. At the garage they looked into it and saw a suitcase on the back seat which they took out and opened ‘ ‘ apparently to determine if it contained any articles of value ” (p. 702). It contained marijuana and the owner was prosecuted.
The court held this was an invalid search and seizure. The opening of -the door of the car and the examination of anything that was visible were regarded by the court as lawful; but the opening of the bag was held to be wrong, against the argument of the Attorney General that it was reasonable carefully to exam *75 ine the contents of the car for valuables and for the protection of the owner from loss and the police from claim of loss.
In the same direction, the District of Columbia Court of Appeals, in Mayfield v. United States (276 A. 2d 123 [April 15, 1971]), held that marijuana discovered by police in the examination of a car which they had the lawful right to impound following the arrest of the owner for driving without a valid license, was inadmissible as an unlawful “ search ”. This was largely placed on the basis of Preston v. United States (376 U. S. 364, supra) and Dyke v. Taylor Implement Mfg. Co. (391 U. S. 216) without discussion of the effect of Cooper (supra).
Several State courts in significant decisions examining the problem have concluded that an inspection of a vehicle in lawful custody where the custody and the examination are not intended to produce criminal evidence against the owner but are incidental to proper control and protection do not violate Fourth Amendment rights to be secure against unreasonable searches.
In State v. Montague (73 Wn. 2d 381 [1968]) the Supreme Court of Washington had before it a case in which defendant had been arrested for traffic violations and, since his car had been left on the street while he was incarcerated, it was impounded under police regulations. After impoundment it was examined for valuables which, if found, “ would be taken to the police station for safekeeping, where they would be itemized and listed on a ' property card ’ ” (p. 383). This inspection uncovered marijuana for the possession of which defendant was prosecuted.
The court held this was not an unreasonable search upon the basis of a careful analysis of Cooper (supra) and other Federal and State decisions. This conclusion is precisely stated: Where there is “ reasonable and proper justification ” for the impoundment of a vehicle, “ and where the search is not made as a general exploratory search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person’s detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed ” (p. 385).
The Supreme Court of Utah in State v. Criscola (21 Utah 2d 272 [1968]) reached the same conclusion on similar facts. *76 Defendant had been arrested for driving a car without a valid driver’s license; and since he could not lawfully operate it, the car was impounded under police regulations and examined. The police found evidence of a crime which the court held admissible on analysis of Cooper and Harris (supra). Chief Justice Crockett, writing for the court, observed: ‘ ‘ When the officers thus became responsible for the car and its contents, it was in conformity with ordinary prudence and customary practice, for the protection of the car owner as well as the police, for the officers to take an inventory of its contents. * * * It is our opinion that the officers were not only acting within their rights, but would have been remiss in their duty if they had not done what they did in taking the evidence and making use of it together with other evidence in building the case against the defendant” (pp. 275-276).
The Supreme Court of Wisconsin reached a similar result in State v. Dombrowski (44 Wis. 2d 486 [1969]). There defendant had been arrested for drunken driving and his car towed away and impounded by police. Opening the trunk of the car they found evidence of homicide. The court held this was not an unreasonable search and analyzed in depth the effect of State action of both Harris and Preston (supra) (pp. 495-498). A minority in the court felt it was an invalid search (p. 497).
The Court of Special Appeals of Maryland examined this question in St. Clair v. State (1 Md. App. 605 [1967]). Defendant had been arrested in a car as a fugitive from another State; his car taken into police possession under lawful regulation and examined. Evidence of a crime was uncovered. Mainly on the basis of Cooper (supra) the evidence was held admissible. The motivation for the inspection was regarded as significant. The court observed: “ When the police thereafter undertook to inventory the contents of the vehicle they did not suspect that any of the articles therein contained had been stolen, and we are satisfied on the record before us that they entered the car for the purpose of safeguarding appellant’s personal property— both for their own protection as well as that of appellant—and not for the purpose of making an exploration for incriminating evidence ” (p. 618). See, also, in the same direction, Godbee v. State (224 So. 2d 441 [1969], decided by the Florida District *77 Court of Appeal), and see People v. Robinson (36 A D 2d 375 [1971]).
This considerable emphasis on the ground and the motivation of inspection as bearing on the reasonableness of method by which evidence concerned with an unrelated event is reflected somewhat in the definition of what is a “ search ’ ’ in the draft of the Model Code of Pre-Arraignment Procedure of the American Law Institute.
A “ search” is an intrusion under color of authority on an individual’s “vehicle”, “ for the purpose of” seizing things (Tentative Draft No. 3, 1970, art. 1, § SS 1.01, subd. [1]). This is just what the inventory examination in the present case is not.
This procedure here involved is, indeed, far more remote from the processes and objectives of the criminal law than actions taken by authorities in seizing and impounding a car as ‘ ‘ evidence ’ ’ followed in narcotics and some other crimes in which inspection has been sustained in some of the decisions which have been discussed.
No such direct nexus between an inspection and an intent to prosecute, directly related to the seizure, is shown. Here the impounding of the vehicle was undertaken without regard to any possible prosecution and physical custody was neither necessary nor useful in the parking violation itself. Its purpose was to promote public safety and to facilitate the flow of street traffic.
This was not, then, an ‘ ‘ unreasonable ’ ’ search. It was an incident to a routine and proper check on a vehicle lawfully taken into custody because it had been left unattended in the wrong place. The evidence thus incidentally discovered was properly admissible.
The order should be reversed and the indictment reinstated.