495 P.2d 504

In the Matter of ONE 1965 ECONOLINE, I.D. #E16JH702043, ARIZONA LICENSE NO. EC–7887.

Jon Lloyd BOULET, Appellant,

v.

STATE of Arizona, Appellee.

No. 1 CA–CIV 1586.

Court of Appeals of Arizona, Division 1.

April 6, 1972.

Rehearing Denied May 11, 1972.
Review Granted June 27, 1972.

---

Finn & Van Baalen by Peter T. Van Baalen, Phoenix, for appellant.

Thelton D. Beck, Yavapai County Atty., by G. Eugene Neil, Deputy County Atty., Prescott, for appellee.

HOWARD, Judge.

This is an appeal from a judgment entered August 28, 1970, forfeiting to the State of Arizona a 1965 Ford Econoline, owned and possessed by Jon Lloyd Boulet, pursuant to A.R.S. § 36–1041 et seq. It is appellant's position that the judgment must be reversed because the trial court erred in admitting into evidence certain exhibits to prove the vehicle contained contraband.

Viewing the evidence in a light most favorable to the State, the following sequence of events led to the cause now before this court. On May 27, 1970, at 1:00 p. m., Arizona Highway Patrolman Fred Reid encountered a Ford van on the right-hand shoulder of State Highway 79 in Yavapai County. The vehicle appeared to be immobile and to have been either in an accident or abandoned. Officer Reid approached the vehicle and observed Boulet inside sitting on a makeshift bed. A .22 caliber rifle was standing next to Boulet. Officer Reid attempted to get Boulet to leave the vehicle but he replied that he was "scared to come out." Officer Reid stated that Boulet was unresponsive to questioning and incoherent and that there was something obviously wrong with him, but there was no smell of alcohol and he had no reason to suspect Boulet of being under the influence of alcohol. Boulet ultimately left the van stating that there had been an accident. Officer Reid informed Boulet that his van would have to be towed away and Boulet consented. Officer Reid also informed Boulet that he was going to inventory Boulet's vehicle and he neither asked for nor received Boulet's consent to make the inventory.

After calling a tow truck Officer Reid opened the rear door of the van. As he did a small suitcase fell out and he commenced his inventory with that item. The second item that he picked up was a shaving satchel, which he opened and in which he saw five bags of white substance, some pills, a needle, a syringe and a spoon. At this point Officer Reid stopped the inventory, placed Boulet under arrest and called for a narcotics agent. The van was towed to the Justice of the Peace Court in Camp Verde, Arizona, where Officer Reid and the narcotics agent, Ron Joseph, obtained a search warrant. The officers then searched the van and found marijuana in a useable quantity.

Officer Reid admitted that at the time he was conducting the inventory of the vehicle

he did not have probable cause to believe a crime was being committed with the vehicle or by Boulet and did not have a search warrant, but was merely following the Arizona Highway Patrol policy on inventories.

On appeal, Boulet sets forth three arguments, the first multi-faceted: (1) Whether evidence in a vehicle forfeiture proceeding is admissible when obtained by a police officer who makes a search of a vehicle and seizes evidence when the owner or the person in possession of the vehicle does not voluntarily consent to such a search, where the search is not incident to an arrest, where the officer does not have probable cause to conduct a search, where the officer has not first obtained a search warrant, where the vehicle is not moveable and where there is no showing of immediate necessity of a search; (2) whether evidence may be admitted over timely objections in a vehicle forfeiture proceeding when the evidence was obtained through a search warrant when the probable cause to obtain the search warrant was developed by the officer through a prior illegal search and seizure, and (3) whether there was a valid inventory of the 1956 Ford Econoline vehicle or whether there was a search termed an "inventory." The State answers by asserting there is only, in actuality, one issue presented on appeal, as follows:

"Does the Fourth Amendment prohibit the inventorying of a disabled motor vehicle at the accident scene before it is released by the investigating officer to the wrecker operator to be towed away from the scene?"

We believe the question essentially resolves itself into whether the "inventory" procedure used here was a "search" in the constitutional sense and if so, whether it was reasonable under the circumstances. The disposition of these points will necessarily dispose of the questions as posed by both parties to this appeal.

The State argues that Officer Reid's actions did not amount to a search. The trial judge, while not specifically so holding, apparently adopted this position in his finding as follows:

"The Court is further of the feeling that the normal search and seizure and probable cause incidental to an arrest case are not applicable to this particular fact situation. Frankly, the Court has some concern as to whether or not this particular type of activity could be subject to abuse under the guise of being an inventory rather than a search and seizure. It is the opinion of the Court that in view of the rather limited experience of the police officer involved, the Court finds that the inventory was made in good faith and not made as a subterfuge for a search. The Court finds that the circumstances surrounding the inventory were reasonable at that time."

## IS AN "INVENTORY" A "SEARCH"?

Is a detailed "inventory" a "search" within the scope of the Fourth Amendment to the United States Constitution? This question was answered in the affirmative by the California Supreme Court in the case of Mozzetti v. Superior Court of Sacramento County, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971). Although there are cases to the contrary, we find the opinion in Mozzetti to be compelling and well reasoned. In that case the petitioner was involved in a two-car collision. She sustained injuries in the accident and was promptly removed to the hospital by an ambulance. When the police arrived at the scene, they determined that petitioner's vehicle was blocking the roadway and arrangements were made to have the vehicle towed to police storage pursuant to California statutory authority.

In accordance with standard procedure, an officer of the Sacramento Police Department was instructed to prepare an inventory of the contents of petitioner's automobile prior to having it towed to police storage facilities. In the course of the inventory the officer saw a small suitcase in the back seat of the car. Finding the suitcase unlocked, he opened it, apparently

to determine if it contained any articles of value. Inside he found a plastic bag containing a quantity of marijuana. Because petitioner's automobile was a convertible, at the conclusion of the inventory, several items found in the car's interior, including the suitcase, were locked in the trunk. The car was then towed to a police storage garage and the keys were later turned over to the petitioner. The marijuana was seized and formed the basis of a criminal prosecution. Petitioner's motion to suppress was denied by the trial court. The court in *Mozzetti* held that the trial court erred in not suppressing the evidence found inside the suitcase. In doing so, the California Supreme Court disavowed the reasoning of a long series of California Courts of Appeal cases reasoning that those cases provided no persuasive rationale to justify the practices which their holdings validated.

The People in *Mozzetti* sought to validate the inventory practice by distinguishing between an inventory and a search. It was argued that a search implies seeking for contraband or evidence of guilt which has been concealed in order that it may be used in the prosecution of a criminal action, whereas the purpose of an inventory is entirely different. In rejecting such a distinction, the court in *Mozzetti* observed that such a concept was expressly rejected by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Court in *Terry*, responding to the government's contention that police stop-and-frisk activity was not within the scope of the Fourth Amendment, stated: "In our view the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. [Citations] This seems preferable to an approach which attributes too much significance to an overly technical definition of 'search'. . . ." 392 U.S. 18 n. 15, at 19, 88 S.Ct. at 1878. The Court went on to state:

"The distinctions of classical 'stop-and-frisk' theory thus serve to divert attention from the central inquiry under the Fourth Amendment—the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. 'Search' and 'seizure' are not talismans. We therefore reject the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officer stops short of something called a 'technical arrest' or a 'full-blown search.'" 392 U.S. at 19, 88 S.Ct. at 1878.

The distinction urged by the People in *Mozzetti* was also unequivocally rejected by the United States Supreme Court in Camera v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), wherein the Court refused to confine the scope of the Fourth Amendment to the typical policeman's search for the fruits and instrumentality of crime, saying: "It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is supected of criminal behavior." 387 U.S. at 530, 87 S.Ct. at 1732. Commenting on the Fourth Amendment the Court in *Camara* stated:

"The basic purpose of this Amendment, as recognized in countless descisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. . . .

. . . except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." 387 U.S. at 528–529, 87 S.Ct. at 1730.

In finally disposing of the question of whether an "inventory" is a "search" within the meaning of the Fourth Amendment, *Mozzetti* states:

"It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner.

Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual. In that process suitcases, briefcases, sealed packages, purses—anything left open or closed within the vehicle—is subjected without limitation to the prying eyes of authorities. Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of a reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions." 484 P.2d at 88, 94 Cal.Rptr. at 416.

We recognize that there is contrary authority. In People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464 (1971), the majority opinion states that an inventory is not a "search", making the same distinction that the People urged on the court in *Mozzetti.* The holding in the *Sullivan* case is somewhat diluted by its conclusion that it was not an "unreasonable" search. Is the court in *Sullivan* saying that it was not a "search" or is it saying that it was not an "unreasonable" search? It seems to place great emphasis on the fact that the inventory is the result of a tow-away program based on the need to keep open the flow of traffic in the streets of Central Manhattan, and not on the discovery of evidence of crime. It points out that in 1969 alone, 108,332 cars were towed away at the rate of 2,000 a week. We fail to see how the opening of suitcases, briefcases and packages is necessary to facilitate the flow of traffic. Rather, we agree with the dissenting opinion of Chief Judge Fuld who, citing *Mozzetti,* renounces the majority view. Chief Judge Fuld ably points out in his dissent that the cases relied upon by the majority as justification for the inventory search are clearly distinguishable as dealing with a search subsequent to an arrest. Indeed, in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), relied upon by the majority in *Sul-*

*livan,* the United States Supreme Court itself pointed out:

" . . . the officers seized petitioner's car . . . because of the crime for which they arrested [him]. . . . Their subsequent search of the car . . was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." 386 U.S. at 61, 87 S.Ct. at 791.

In the case *sub judice* there is no particular relationship between the reason for taking the car into custody, the reason for impounding it, and the reason for the search.

■ We agree wtih *Mozzetti* and hold that an "inventory search" constitutes a "search" within the meaning of the Fourth Amendment to the United States Constitution. We now proceed to determine whether or not, because of the exigencies of the situation, the search was "reasonable."

## THE "REASONABLENESS" OF THE SEARCH

Again, the court is faced with the problem of balancing competing interests. The automobile owner is concerned with the protection of his property and his right to privacy. Law enforcement officers are interested in protecting themselves against unfounded claims of missing or damaged goods. If the automobile is to be stored in a private garage, the garage owner is also interested in protection against unfounded claims of missing or damaged goods. Can all of these competing interests be satisfied short of an inventory search? We believe they can. We would first observe that the taking of an inventory does not insure the safety of the contents nor does it ipso facto prevent an owner from later claiming that goods had been stolen or damaged.

We fail to see how the taking of an inventory will insulate the police against false accusations of theft and assure the property owner that his property will not be taken. Unscrupulous persons who desire to steal

articles will simply not list them on the inventory. Owners who wish to assert spurious claims against law enforcement officers or the garage owners can simply claim that the officers did not list them on the inventory. In fact, we can envision instances when the taking of an inventory may actually alert potential thieves to the value of items contained in the automobile. In balancing the conflicting interests we find a countervailing interest in maintaining the privacy of one's personal effects and preventing anyone, including the police, from searching suitcases and other closed containers which may be in the automobile at the time it is being removed to storage. We believe that each of these interests can be adequately safeguarded by measures short of the type of inventory search conducted in this case. As suggested in *Mozzetti*, items of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property. We recognize that in cases of automobile accidents the damage to the car might prevent such action. In those instances, after making an inventory of any personal property in plain sight within the automobile, the officers may take such property as they may deem necessary into their custody and, if they wish for their own protection, seal suitcases, briefcases, packages and the like.

■ If we have not already made it clear, we wish at this time to state that the police do have the authority to inspect and inventory all items of personal property in plain sight within the vehicle and, if necessary, to lock these items in the trunk, or transfer them to some other secure place for safekeeping. If, in the course of such activity, the police observe contraband or other incriminatory evidence they may seize it.

We again acknowledge that there is authority to the contrary. In Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781 (1971) the Supreme Court of Virginia held the inventory search of an automobile to be reasonable. They did so under the theory that there was no other immediate means of safeguarding the property and protecting the police from false claims. We have already noted in this opinion that we believe that there are alternatives which do not infringe upon one's Fourth Amendment rights and therefore, we do not agree with *Cabbler*.

■ It was suggested at the oral argument of this case that the inventory search is reasonable in order to protect law enforcement officers or private garage owners from bombs or weapons which might be in the vehicle. We are not aware of how many instances in recent years law enforcement officers, after an accident, have found bombs or other explosives in an automobile that they were towing away. We feel that such a risk is so remote that it would be unwarranted to infringe upon Fourth Amendment rights to cover such a circumstance. Our opinion of the loaded weapon argument is the same and we feel it is equally flimsy.

Cooper v. California, supra, has made it clear that mere legal custody of an automobile by the police does not create some new possessory right to justify search of the vehicle. As pointed out in *Cooper*, the lawful custody of an automobile does not of itself dispense with the constitutional requirements of searches thereafter made of it. *Cooper* indicated that "the reason for and nature of the custody may constitutionally justify the search, . . ." and held that custody of an automobile retained as evidence of crime and pending forfeiture was such a custody. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) the Supreme Court validated a search of an automobile in lawful police custody only because there was probable cause to believe it contained weapons and stolen money.

■ In the instant case there were no circumstances to justify the search of the contents of the shaving satchel without a warrant. The search was not incident to

a lawful arrest, based on probable cause to believe the vehicle contained contraband, or justified by the peculiar nature of the police custody involved. Nor were there exigent circumstances which made the search reasonable and necessary.

The judgment of the trial court is reversed.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.