122 N.J. Super. 585 (1973)
301 A.2d 185
STATE OF NEW JERSEY,
v.
CATHLEEN MARIE JONES AND RICHARD JOHN BUIST, DEFENDANTS.
Superior Court of New Jersey, District Court, Bergen County.
Decided February 14, 1973.
*589 Mr. Sherwin D. Lester, Bergen County Prosecutor, for the state.
Mr. Edward Goldberg, attorney for defendants.
HUOT, J.C.D.C.
This is a motion to suppress evidence seized as a result of an inventory of an automobile conducted by a police officer on August 17, 1972. As a result of said inventory the officer discovered a paper containing green vegetation on the floor between the console and passenger bucket seat. Defendants were charged with possession of marijuana (less than 25 grams), contrary to N.J.S.A. 24: 21-20(a) (3). After the arrest defendants' persons were searched and two plastic bags containing green vegetation were discovered in the purse of defendant Jones. A search of the trunk disclosed a pipe with marijuana residue.
The facts are undisputed: At approximately midnight on August 17, 1972 Patrolman Adcock observed an automobile being driven in a westerly direction on Route 46 in the Borough of Hasbrouck Heights. His attention was attracted to the vehicle by its studded snow tires and an inspection sticker indicating that it had failed inspection. Patrolman *590 Adcock signaled the driver of the vehicle to pull over to the side of the highway, and after inspecting the operator's license and registration informed the driver and his passenger, defendants in this case, that he was impounding the automobile because he considered it unsafe and because of the studded snow tires. At that time Patrolman Adcock conducted an inventory of the vehicle as part of the policy of the Bergen County Police Department. In the course of the inventory he discovered marijuana between the console and the passenger bucket seat. Defendants were then arrested. They contend that the search and seizure in this case were illegal and violative of their constitutional rights. They contend that the officer had no right under New Jersey law, and the facts here present, to impound the car, and that with no right to impound there was no right to enter the vehicle for the purpose of an inventory. Defendants further contend that even if there were a right to impound and a concurrent right to inventory, that right was limited to inventory and did not encompass the right to search between the console and the seat.
The determination of whether a "search" has been made is prerequisite to the determination of whether an unlawful search and seizure has taken place. A search is a search and cannot be anything different simply because the police officer conducting the same chooses to characterize it as an "inventory." It is well settled in New Jersey that the term "search" necessarily implies some exploratory investigation and is predicated upon the fact of physical entry into the automobile. State v. Griffin, 84 N.J. Super. 508 (App. Div. 1964); State v. Lowry, 95 N.J. Super. 307 (App. Div. 1967); In re Estate of Shivers, 105 N.J. Super. 238 (App. Div. 1969); State v. Bell, 55 N.J. 239 (1969). In the present case Patrolman Adcock's physical entry into the automobile, coupled with his exploratory investigation of the same, is readily conclusive of the fact that a search had been made.
*591 Since the search of the automobile was associated with the impounding of the vehicle, the validity of the search depends upon the legitimacy of the impounding. Patrolman Adcock testified that he determined that the automobile should be impounded because the vehicle was fitted with studded snow tires in violation of N.J.S.A. 39:3-81, was in poor general condition, and did not bear a current inspection certificate of approval.
If there was a right to impound the vehicle, then the right to enter the vehicle for the purpose of an inventory is a concurrent right which must exist for the protection of the property rights of the defendant to those chattels then in the vehicle, as well as for the protection of the officer and the persons who tow the vehicle and who take and keep custody of it. Thus, it is necessary to determine if the right to impound a vehicle for a violation of the Motor Vehicle Law exists.
An examination of N.J.S.A. 39:8-9 and other pertinent sections of the Motor Vehicle Act requires the conclusion that the impounding of the automobile driven by defendant Richard Buist was without statutory authority. N.J.S.A. 39:3-81, which prohibits the operating of a motor vehicle in August with studded tires, expressly provides for a fine to be paid by any person violating the statute:
When used on a state highway, no motor vehicle tire shall be fitted with any blocks, hobs, studs or other projections and no wheel shall be locked so as not to revolve. A person violating this section shall be liable to a fine of not less than ten nor more than twenty dollars for each offense together with the costs of prosecution, to be recovered at an action at law in the name of the state, before a court of competent jurisdiction by the state highway department. The fine shall be paid into the state treasury to the credit of the funds available for the construction, maintenance and repair of roads.
The above-quoted statute provides as penalty for a violation thereof the imposition of a fine only, and then not in excess of $20. Fines are imposed by a court, however, and we are here concerned with the authority of a police officer *592 in the performance of his duties. N.J.S.A. 39:5-25 authorizes a police officer to arrest without warrant any person who violates any provision of Chapter 3 of Title 39 in the officer's presence, or the officer may serve a summons upon such violator. No arrest was made for the motor vehicle violation; in fact, the testimony was clear that no arrest was made until after the discovery of the marijuana. But even if there had been an arrest, the statute permits detention only for such length of time necessary for the arresting officer to make a complaint and obtain an arrest warrant. This statute has, however, been held to be supplanted by R. 7:6-1 et seq. (formerly R.R. 8:10-1 et seq.). See Winberry v. Salisbury, 5 N.J. 240 (1950); State v. Nimmo, 11 N.J. Super. 606 (Cty. Ct. 1951); State v. Ahrens, 25 N.J. Super. 201 (App. Div. 1953).
R. 7:6-1 provides that for motor vehicle violations "the complaint and summons shall be a uniform traffic ticket in the form prescribed * * *" (Emphasis supplied). The Administrative Director of the Courts has prescribed such complaint and summons (Municipal Court Bulletin III, May 1965). Thus, although in this case there was no arrest made for the violation of N.J.S.A. 39:3-81 or N.J.S.A. 39:8-9, there was no authority to make such arrest. The mandate of R. 7:6-1 is the issuance of a uniform summons and complaint.
There was no power to arrest for a violation of N.J.S.A. 39:3-81. Likewise, there is no power of arrest for a violation of N.J.S.A. 39:8-9. There is no dispute that the vehicle had failed to pass inspection. The owner of the vehicle, Audrey Buist, mother of defendant Richard Buist, was required to make repairs to the vehicle. N.J.S.A. 39:8-4. The Director of Motor Vehicles has the power to revoke the registration of the vehicle for her failure to make such repairs. N.J.S.A. 39:8-7. The courts may assess a fine of not more than $100 against Audrey Buist or imprison her for 30 days. N.J.S.A. 39:8-9. But nowhere in Title 39 is there a provision which authorizes a complaint *593 or penalty against the operator of an inspected or unapproved vehicle who is not the owner thereof. Indeed, the only reference to operator in Chapter 8 is contained in N.J.S.A. 39:8-6 which requires an operator to display an official certificate of approval. There is no penalty provided against an operator who fails to display such certificate.
Thus, defendant Richard Buist could not be arrested for operating a vehicle in violation of N.J.S.A. 39:3-81; only a summons and complaint could be issued to him. He could not be arrested or served with a summons and complaint for violation of N.J.S.A. 39:8-9. Since this is true of defendant Richard Buist, a fortiori it is true of defendant Cathleen Jones.
With no right to arrest and, in fact, without an arrest, the search cannot be sustained as incident to a valid arrest.
The Legislature has provided for the seizure of motor vehicles in certain circumstances. N.J.S.A. 24:21-35 authorizes a police officer to seize a vehicle which is used in the transportation of dangerous substances in violation of the narcotics laws, and N.J.S.A. 33:1-66 authorizes a police officer to seize a motor vehicle where he has reasonable cause to believe that it contains illicit alcoholic beverages.
An examination of Title 39 reveals that there are four sections which do authorize the seizure of motor vehicles operated over the highways of this State.
None of these sections is applicable to the facts of this case, and the State does not urge their application. However, we will briefly consider them. N.J.S.A. 39:5-47 provides:
The commissioner may authorize the seizure of a motor vehicle operated over the highways of this state when he has reason to believe that the motor vehicle has been stolen or is otherwise being operated under suspicious circumstances and may retain it in the name of the department until such time as the identity of ownership is established, whereupon he shall order the release of the motor vehicle to its owner.
*594 It is clear that this statute does not apply to the facts of this case. At no time did Patrolman Adcock testify that he had suspicions concerning the ownership of the automobile driven by defendant Buist, or that defendant was operating the automobile "under suspicious circumstances." He was aware from the registration certificate produced that the ownership of the vehicle was in the name of defendant's mother, Mrs. Audrey Buist. The seizure of the vehicle, Patrolman Adcock testified, was related to the physical condition of the vehicle.
N.J.S.A. 39:3-4 authorizes a motor vehicle inspector or police officer to remove any unregistered vehicle from the public highway. N.J.S.A. 39:10-6 allows for the seizure of a motor vehicle for failure to produce a certificate of ownership or registration. N.J.S.A. 39:10-21 allows the Commissioner to seize a motor vehicle if the dealer who has possession of same is unable to produce a certificate of origin or a certificate of ownership.
N.J.S.A. 39:8-7 provides for the revocation of the registration of a motor vehicle registered in this State and operated on the highways of this State which (a) does not display a current certificate of approval and (b) is shown by the inspection to be incapable of being placed in a proper condition to make its use safe on the highway. N.J.S.A. 39:8-9 provides for the imposition of a fixed fine on any person who is guilty of violating the provisions of Chapter 8 of the Motor Vehicle Act. However, nowhere in Chapter 8 is authority granted to imponnd a motor vehicle which is violating the law.
The impounding of the automobile has thus been seen not to have been incident to an arrest and not to have been authorized by any statutory provisions of the Motor Vehicle Act, N.J.S.A. 39:1-1 et seq.
Until now the court has used the word chosen by the officer to describe his action in removing the vehicle from the road. The word "impound," however, tends to distract attention from the issue which is really raised in this case. The vehicle *595 was in fact seized, taken into custody by the officer, and it is that act which must be judged, regardless of the name by which one calls it.
In law the word "impound" has an historical meaning which carries a connotation more restricted than it has acquired in modern usage.
Black's Law Dictionary (4th ed. 1968) defines it:
"impound: to shut up stray animals or distrained goods in a pound; * * * to take into the custody of the law or of a court. Thus, a court will sometimes impound a suspicious document produced at a trial.
The origin of its use at common law was in landlord-tenant cases, wherein a tenant was in default of rent due. In such cases a landlord could distrain the chattels and livestock of the tenant for the unpaid rent. A distress and an impounding were the two separate and distinct steps used to enforce payment. For a distress the landlord could post a notice at the premises declaring that the tenant's chattels or livestock could not be removed from the premises until the rent was paid. Once this was done, the landlord could assure the continued safety of those chattels or livestock by taking them to a public pound. The act of depositing them at the public pound constituted the impounding. Elkman v. Rovner, 133 N.J. Eq. 93 (Ch. 1943); Lipinski v. Frank, 12 N.J. Misc. 174, 170 A. 608 (Sup. Ct. 1934); VanHorne v. Brown, 85 N.J.L. 544 (Sup. Ct. 1914); Newell v. Clark, 46 N.J.L. 363 (Sup. Ct. 1884).
It is apparent that we are not here concerned with an impounding as is understood in the law. Rather, we are concerned with an impounding as the word is commonly understood today, i.e. a taking into custody. In this sense it is a seizure, and as such must be judged in the light of the Fourth Amendment of the United States Constitution and Art. I, par. 7 of the New Jersey Constitution (1947). The wording of both is identical:
*596 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *
As was stated by Chief Judge Fuld in his dissenting opinion in People v. Sullivan, 29 N.Y.2d 69, 323 N.Y.S.2d 945, 272 N.E.2d 464 (Ct. App. 1971)
A search is no less a search, a seizure no less a seizure, because termed an "inventory". We certainly are not concluded by the label assigned to a police procedure, nor should we, the Supreme Court remnids us, attribute "too much significance to an overly technical definition of `search'". (Terry v. Ohio, 392 U.S. 1, 17-18, n. 15, 88 S.Ct. 1868, 20 L.Ed.2d 889). [29 N.Y.2d at 77, 323 N.Y.S.2d at 952, 272 N.E.2d at 469]
It is to be noted that we are not here discussing the search of the vehicle but, rather, the right to seize it. As stated above, if there is a right to seize, then there must be a concommitmant right to search. The following discussion perforce refers to cases wherein the search preceded the seizure, but the principle is the same. This court could not find, nor was its attention directed by counsel, to any case wherein the issue here raised has been discussed.
It is well settled that the Fourth Amendment bars only those searches which are unreasonable. State v. Boykins, 50 N.J. 73, 81 (1967); State v. McKnight, 52 N.J. 35, 58 (1968); State v. Campbell, 53 N.J. 230, 233 (1969); State v. Gerardo, 53 N.J. 261, 268 (1969); State v. Gray, 59 N.J. 563, 567 (1970); State v. McNair, 60 N.J. 8, 12 (1972); State v. DeSimone, 60 N.J. 319, 324 (1972). The courts have carefully defined those classes of cases where the search and seizure is deemed reasonable, not withstanding the absence of a search warrant. Those exceptions which survive constitutional inhibition include a search incident to a valid arrest, State v. Mark, 46 N.J. 262, 271 (1966); State v. Boykins, 50 N.J. 73, 77 (1967); State v. Campbell, 53 N.J. 230, 233 (1969); State v. McNair, supra; the seizure of an automobile as an instrumentality *597 of crime, State v. Fioravanti, 46 N.J. 109, 124 (1965), certif. den. 384 U.S. 919, 86 S.Ct. 1365, 16 L.Ed.2d 440; State v. McKnight, supra, 52 N.J. at 57-58; State v. Zito, 54 N.J. 206, 220, 221 (1969), seizure of articles in plain view, Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Gray, 59 N.J. 563, 569 (1971), and the existence of probable cause to believe that a crime has been committed, State v. Boykins, supra, State v. Campbell, supra, State v. Hock, 54 N.J. 526 (1969); State v. Gray, supra.
In the instant case the record is barren of facts or circumstances which would allow this case to fall within the ambit of any one of the above-mentioned exceptions.
The automobile was not seized as incident to a lawful arrest; indeed, no arrest was made prior to its seizure. It was not an instrumentality of a crime; violations of motor vehicle laws are not "crimes." State v. Macuk, 57 N.J. 1 (1970). While the automobile and its studded tires were in plain view neither of them constituted per se property which was injurious to public health or morals.
The facts of this case clearly necessitate an examination of the so-called "Inventory Rule" and its application to this case.
In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), reh. and modif. den. 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243, defendant was lawfully arrested and his car was impounded under the provisions of the California Health and Safety Code, § 1611, authorizing a state officer making an arrest for violation of the narcotic laws to seize a vehicle used in the unlawful transportation of any narcotic, and to hold the car as evidence until a forfeiture be declared or a release of the car ordered. Pursuant to this statute, the accused person's car was impounded and, a week later, searched. A majority of the United States Supreme Court held that the examination or search of an automobile validly held by officers for use as evidence in a *598 forfeiture proceeding could not be held unreasonable under the Fourth Amendment. The court stated: at 386 U.S. 61, 87 S.Ct. 790:
The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one. While it is true, as the lower court said, that "lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it", ibid., the reason for and nature of the custody may constitutionally justify the search * * *. Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car  whether the state had "legal title" to it or not  was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding. [386 U.S. at 61, 87 S.Ct. at 790]
In 1968 the Supreme Court again considered the question of the constitutionality of a search of an automobile pursuant to a regulation authorizing the impounding of such vehicle. In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the police had impounded defendant's automobile as evidence after his arrest for robbery. Pursuant to a regulation of the Metropolitan Police Department which required the arresting officer to make a thorough search of the car and to remove all valuables from it, the arresting officer opened the car and saw affixed to it the registration card which bore the name of the robbery victim. The *599 card was seized. The court allowed the admissibility into evidence of the card but made express notation that the reason for its holding was based upon the fact that the article was in plain view and not simply the result of the inventory:
The admissibility of evidence found as a result of a search under the police regulation is not presented by this case. The precise and detailed findings of the District Court, accepted by the Court of Appeals, were to the effect that the discovery of the card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.
Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." [at 236, 88 S.Ct. at 993]
Mr. Justice Douglas' concurring opinion (390 U.S. at 236, 237, 88 S.Ct. at 994) noted that:
(1) the car was lawfully in police custody, and the police were responsible for protecting the car;
(2) while engaged in the performance of their duty to protect the car, and not engaged in an inventory or other search of the car, they came across incriminating evidence." [Emphasis supplied]
That same year the Supreme Court invalidated a search of an automobile by police officers which was made after the arrest of the occupants for a traffic offense. However, the arrest was not made until the defendants were in custody inside the court house, with the automobile parked on the street outside. In Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), the court observed that the search in question was not saved by Cooper v. California, supra, and stated:
In the instant case there is no indication that the police had purported to impound or to hold the car, that they were authorized by *600 any state law to do so, or that their search of the car was intended to implement the purposes of such custody. Here the police seem to have parked the car near the courthouse merely as a convenience to the owner, and to have been willing for some friend or relative of McKinney (or McKinney himself if he were soon released from custody) to drive it away. The reasons that made the warrantless search in Cooper reasonable thus do not apply to the search here. [at 221, 88 S.Ct. at 1475]
We note that in Cooper, Harris, and Dyke, supra, the decisions by the Supreme Court are silent on the question of whether an inventory conducted per se pursuant to an impounding regulation is constitutionally valid; nevertheless a variety of cases has arisen since Cooper, supra, which has resulted in the conception of the popularly-coined "Inventory Rule." This rule was explained by the court in State v. Montague, 73 Wash.2d 381, 438 P.2d 571 (Sup. Ct. 1968):
What is now frequently referred to as the inventory rule will not apply, however, and evidence of crime discovered during the taking of the inventory will be suppressed, as evidence, unless there first be a lawful arrest. Miller v. State, 137 So.2d 21 (Fla. App. 1962). * * * Neither would this court have any hesitancy in suppressing evidence of crime found during the taking of the inventory, if we found that either the arrest or the impoundment of the vehicle was resorted to as a device and pretext for making a general exploratory search of the car without a search warrant. State v. Michaels, 60 Wash.2d 638, 374 P.2d 989 (1962); People v. Garrison, 189 Cal. App.2d 549, 11 Cal. Rptr. 398 (1961).
When, however, the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed. [438 P. at 574]
Basically, the cases can be grouped into five classifications: (1) those which validate a search predicated on an inventory made because of a police policy to impound automobiles *601 after an arrest has been made: United States v. Robbins, 424 F.2d 57 (6 Cir.1970), cert. den. 402 U.S. 985, 91 S.Ct. 1674, 29 L.Ed.2d 15 (1971); United States v. Lipscomb, 435 F. 2d 795 (5 Cir.1970), cert. den. 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); United States v. Boyd, 436 F.2d 1203 (5 Cir.1973); United States v. Pennington, 441 F.2d 249 (5 Cir.1971), cert. den. 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971). The courts in these cases appear to rationalize their decisions upon the basis of Cooper v. California, supra, and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1972); however, the limitations in Cooper (seizure of the automobile as evidence and close relationship between the reason for the search, reason for impounding and reason for arrest), and Chambers[1] (probable cause), were absent in these cases; (2) cases which validate a search predicated on an inventory made because of police policy to impound automobiles after an arrest has been made, with the additional requirement that the item be within plain sight: Cotton v. United States, 371 F.2d 385 (9 Cir.1967); United States v. Mitchell, 458 F.2d 960 (9 Cir.1972). The courts approve the taking of an inventory but nevertheless base their decision upon the Supreme Court's approval of reasonable police conduct which protects an impounded car in Harris v. United States, supra; (3) cases which hold that a warrantless search of an automobile under police control is only lawful if such search is closely related to the reason for the arrest and the reason that the automobile is in custody: Williams v. United States, 412 F.2d 729 (5 Cir.1969); United States v. Ryan, 415 F.2d 847 (5 Cir.1969); Sexton v. Gibbs, 327 F. Supp. 134 (D.C.N.D. Tex. 1970); (4) cases which invalidate the inventory as an unlawful *602 search and seizure, where the impounding, conducted after the accused's arrest, was not conducted pursuant to the lawful limitations prescribed by Cooper and Harris, supra: United States v. Pannell, 256 A.2d 925 (D.C. Ct. App. 1969); Pigford v. United States, 273 A.2d 837 (D.C. App. 1971); (5) cases which invalidate a search predicated upon an inventory where the impounding of the automobile conducted after the defendant's arrest, was lawful but nevertheless hold that the search was unreasonable. In Mayfield v. United States, 276 A. 2d 123 (D.C. Ct. App. 1971) the court stated:
This court, however, in situations where the search has occurred in a parking area contiguous to a police station while the accused is inside the building being booked on a traffic charge (which is the case here) has consistently held that resort to impoundment procedure does not make admissible  at least for the prosecution of wholly different offenses  articles thereby uncovered which would be otherwise inadmissible on fourth amendment principles. [at 125, citations omitted]
And in State v. Ruiz, 17 Ariz. App. 76, 495 P.2d 516 (Ct. App. 1972); People v. Miller, 7 Cal.3d 219, 101 Cal. Rptr. 860, 496 P.2d 1228 (Sup. Ct. 1972), and Mestas v. Superior Court of Santa Clara County, 7 Cal.3d 537, 102 Cal. Rptr. 729, 498 P.2d 977 (Sup. Ct. 1972), it was held that the absence of facts indicating "exigent circumstances,"[2] "probable cause,"[3] or "search incident to a lawful arrest,[4] was fatal to the argument that a search is reasonable when only predicated on the fact that an inventory was made of an impounded automobile.
*603 In all of the above-cited cases an arrest was made. They are, thus, clearly distinguishable from the instant matter wherein there was no arrest.
The Supreme Court of California considered the question of an inventory taken when a vehicle was impounded without a prior arrest. In Mozzetti v. Superior Court Sacramento County, 4 Cal.3d 699, 94 Cal. Rptr. 412, 484 P.2d 84 (Sup. Ct. 1971), petitioner was injured in an automobile accident and was promptly removed by ambulance to the hospital. When police arrived at the scene, they determined that petitioner's vehicle was blocking the roadway and arrangements were made to have the car towed to police storage pursuant to the Motor Vehicle Code.[5] In accordance with police department procedure, the officer conducted an inventory of the contents of the automobile, in the course of which he found a suitcase, opened it and discovered marijuana. The marijuana was seized. In condemning the inventory as an unlawful search and seizure, the Court rejected the Government's distinction between an inventory and a search and stated:
It is apparent from the foregoing and other decisions that the several Courts of Appeal have adhered to a circumscribed, semantic approach in defining the scope of the Fourth Amendment's prohibition against unreasonable searches and seizures. Such a concept was expressly rejected by the United States Supreme Court in Terry v. Ohio (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
Moreover, language employed in decisions in both the Supreme Court and this court points toward rejection of the notion that a police inventory is not a search within the scope of the Fourth Amendment. (See Harris v. United States (1968), 390 U.S. 234, 236, 237, 88 S.Ct. 992, 19 L.Ed.2d 1067; People v. Williams (1967); 67 Cal.2d 226, 60 Cal. Rptr. 472, 430 P.2d 30; People v. Grubb, (1965), 63 Cal.2d 614, 618, 47 Cal. Rptr. 772, 408 P.2d *604 100 * * * merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions. [484 P. 2d at 87]
The Court of Appeals of Arizona recently decided a similar situation. In re One 1965 Econoline I.D.E 16 JH 702043, Ariz. License No. EC-7887, 17 Ariz. App. 64, 495 P.2d 504 (1972), a state police officer encountered a Ford van on the side of the highway, which had been involved in an accident. The officer informed the occupant that the vehicle would have to be towed away, and without asking or receiving consent he conducted an inventory. In the course of his inventory the officer opened a shaving satchel and discovered narcotic paraphernalia. He arrested the occupant. In rejecting the State's argument that an inventory procedure is to be distinguished from a search, the court based its reasoning upon the decision in Mozzetti v. Superior Court of Sacramento County, supra, and referred to Chief Judge Fuld's dissenting opinion in People v. Sullivan, supra, and said:
Rather, we agree with the dissenting opinion of Chief Judge Fuld, who, citing Mozzetti, renounces the majority view. Chief Judge Fuld ably points out in his dissent that the cases relied upon by the majority as justification for the inventory search are clearly distinguishable as dealing with a search subsequent to an arrest. Indeed, in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), relied upon by the majority in Sullivan, the United States Supreme Court itself pointed out:
"* * * The officers seized petitioner's car * * * because of the crime for which they arrested [him]. Their subsequent search of the car * * * was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained." 386 U.S. at 61, 87 S.Ct. at 791.
In the case sub judice there is no particular relationship between the reason for taking the car into custody, the reason for impounding it, and the reason for the search.
We agree with Mozzetti and hold that an "inventory search" constitutes a "search" within the meaning of the Fourth Amendment to the United States Constitution. [495 P.2d at 508]
*605 After its determination that the "inventory" conducted by the police officer was indeed a "search," the court proceeded to consider the reasonableness of the search in light of the limitations expressed in Cooper v. California, and Chambers v. Maroney, supra.
New Jersey, unlike California, does not have a statutory provision relating to removal of vehicles from the highway. The action taken by Patrolman Adcock must therefore be judged on the reasonableness of such action under the circumstances in the light of the New Jersey and United States Constitutional protection against unreasonable seizures. No judicial formula has been established to determine what is reasonable. Decision must be based on the facts and circumstances of each case. Go Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931).
Studded snow tires are permitted in New Jersey between November and April. (New Jersey Division of Motor Vehicle Regulations, "Design, Construction and Use of Tires Fitted with Studs," 13:4-119.1, § 2, par. g). Judicial notice must be taken of the fact that the roads are not snow-covered continuously during that period. Damage to bare roads in December is not really much different from damage to bare roads in August. That fact, plus the relatively low fine established by the Legislature for the use of such tires, indicates that being fitted with such tires is not alone sufficient cause for the seizure of a vehicle.
The vehicle had failed inspection on August 12, 1972. The card furnished at the inspection station indicates that the card given was a "second card."
We do not know what was rejected the first time the vehicle was inspected, but on the second inspection the vehicle was rejected because of poor or improper (1) wheel alignment, (2) directional signals, (3) red rear light, (4) stop lights, (5) studded tires, (6) exhaust system, (7) head lights, (8) wiring and switching, (9) parking brake handle. *606 It is reasonable to infer that these were the same items rejected at the original inspection.
While on or perhaps even a combination of some of the above violations would not justify the seizure of an automobile, the circumstances present in this case lead to a different conclusion. This was the second inspection for the automobile: it was rejected for nine violations, some of which created a hazard to the occupants of the subject vehicle as well as to other motorists on the road. This is particularly true in the area of wheel alignment, directional signals and stop lights.
It is well settled that driving an automobile is a privilege, not a right, and subject to the reasonable exercise of the police powers of the State. Garford Trucking Inc. v. Hoffman, 114 N.J.L. 522 (Sup. Ct. 1935); State v. Kabayama, 94 N.J. Super. 78 (Law Div. 1967), aff'd 98 N.J. Super. 85 (App. Div. 1967).
The police powers were not abused by the decision to remove this particular vehicle from the road. The court does not find such action, on the facts of this case, to be "unreasonable" so as to be proscribed by the constitutional protections.
The seizure of the vehicle having been found to be proper, the subsequent inventory of the vehicle was proper. The white envelope which was found between the seat and console was in plain view once the officer entered the automobile. His entry into the vehicle was proper, and thus that which was in plain view thereafter was legitimately inventoried. It should be noted that we are not here concerned with a closed suitcase, as in Mozzetti, supra, a shaving satchel, as in One 1965 Econoline, supra, or any other type of closed or locked package.
The discovery of the marijuana in the exposed envelope justified the arrest of the occupants. The arrest then justified the subsequent search of the persons of the defendants over the search of the vehicle.
*607 This court concludes that the seizure of this automobile under the circumstances of this case, was reasonable and not violative of the New Jersey and United States Constitutions. For the reasons herein expressed, the motion to suppress is denied.
NOTES
[1] In Chambers v. Maroney, the court stated (399 U.S. at 52, 90 S.Ct. at 1981), "On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search."
[2] State v. Ruiz and People v. Miller, supra.
[3] People v. Miller and Mestas v. Superior Court of Santa Clara supra.
[4] Mestas v. Superior Court of Santa Clara County, supra.
[5] Vehicle Code, § 22651, provides in part as follows: "Any member of the California Highway Patrol * * * may remove a vehicle from a highway under the following circumstances: * * * (g) When the person or persons in charge of a vehicle upon a highway are by reason of physical injuries or illness incapacitated to such an extent as to be unable to provide for its custody or removal."