# CITY OF ST. PAUL v. LEO MYLES.

218 N. W. 2d 697.

February 15, 1974—No. 43459.

*O'Neill, Burke & O'Neill* and *Patrick H. O'Neill,* for appellant.
*Kenneth J. Fitzpatrick,* City Attorney, and *Stephan C. Rathke* and *Keith Hanzel,* Assistant City Attorneys, for respondent.
*C. Paul Jones,* State Public Defender, and *Mark W. Peterson,* Assistant State Public Defender, amicus curiae.

Heard before Knutson, C. J., and Kelly, Todd, and Olson, JJ., and reconsidered and decided by the court en banc.

KELLY, JUSTICE.

Defendant appeals from conviction in St. Paul Municipal Court of operating a vehicle with a noisy muffler, simple assault, and illegal transportation of a firearm. The principal issue on this appeal is whether evidence discovered in a police "inventory" of the contents of an automobile prior to impounding the car is the product of an unreasonable search and seizure and therefore inadmissible.

On June 1, 1971, at approximately 1:35 a.m., St. Paul police

officers Ballis and Robilliard observed an automobile having a noisy exhaust system. After following the car for a few blocks and noticing a passenger in the rear seat who resembled a person wanted in both St. Paul and Minneapolis, the officers stopped the car. Defendant got out of his car and proceeded toward the squad car and put himself in a position to be frisked. He was advised by Officer Robilliard that this was unnecessary because he was stopped only for having a noisy muffler.

Meanwhile, Officer Ballis was looking into defendant's car to determine whether the passenger in the rear seat was the person sought by the authorities. When defendant saw this, he strenuously insisted that the officers had no right to look into his car when he was stopped only for a traffic offense and began shouting obscenities at the officers. The passenger in the rear seat emerged from the car and became similarly abusive toward the officers. During the ensuing discussion, defendant ran toward Officer Ballis, grabbed his arm and swung at him. The swing, which was blocked by one of the officers who had arrived in an assisting squad car, was also observed by Officer Robilliard. Defendant and his two passengers were arrested and placed in the squad cars. Defendant and witnesses testifying for him said that he had not attempted to strike the officer but had merely raised his hands to protect himself.

After the arrests, Officer Ballis inventoried the contents of the automobile, which belonged to defendant's sister who was not present at the scene of the arrest, and gathered the information the city deemed necessary before towing away and impounding any car. The inventory was done according to a standard police procedure before having the car towed away and impounded. The sole purpose of the inventory was to make a record of the car's contents at the time of impoundment. In the course of this inventory, an automatic pistol was found in the glove compartment. Defendant was subsequently convicted of illegal transportation of this pistol.

Defendant questions the constitutional propriety of the war-

rantless search and seizure of the pistol discovered in the glove compartment. In the instant case it was appropriate that the police impound the car and have it towed off the street. The owner of the car was not present, and the driver and passengers were under arrest. It was 1:35 a. m. Under all of the circumstances, it was a reasonable measure to protect the car and its contents. While it might be argued that a policeman could be posted to guard the vehicle, the cost would be quite staggering if such a policy were carried out in every instance. In any event, we cannot say that the standard procedure was unreasonable. It also might be argued that the police could lock up the car and thus to some extent protect its contents. This procedure would not necessarily protect the police or the city from claims.[1] Furthermore, the city should be permitted to take reasonable measures to protect its public image and that of the police, even if no liability were to ensue.[2]

Not all warrantless searches are prohibited by the Fourth Amendment, but only those which are unreasonable. We hold that a standard police procedure of inventorying the contents of an impounded vehicle is reasonable and therefore not constitutionally improper if performed without a warrant. In reaching this conclusion, we note that the search was not a probing, exploratory search conducted solely for the purpose of discovering

---

[1] We have previously held that robbery was not a superseding cause relieving a hotel operator of liability for loss of rings which a guest had bailed for safekeeping against theft. Wallinga v. Johnson, 269 Minn. 436, 131 N. W. 2d 216 (1964). Undoubtedly, where the city impounds a vehicle, a bailment is created for the vehicle and all its contents. A robbery of the contents would not be a superseding cause, and under Wallinga, the city would have the burden of showing it was not negligent.

[2] By statute, municipalities are liable for its torts and those of its officers, employees, and agents acting within the scope of their duties whether arising out of a governmental or proprietory function with certain exceptions which include nonperformance or failure to perform a discretionary function or duty. Silver v. City of Minneapolis, 284 Minn. 266, 170 N. W. 2d 206 (1969).

evidence of other crimes. On the contrary, this standard police procedure is conducted to protect the property of the owner of the vehicle from loss or theft during the period of impoundment. Such safeguards taken with the objective of guarding the owner's possessions in his absence are commendable. The procedure also should be a great help in preventing false claims of loss from being successfully pursued in situations similar to those present in this case.

The defendant places great reliance on Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. 2d 777 (1964), as holding the search of a defendant's car while he is in custody invalid. In Preston, the defendant was arrested for the minor offense of vagrancy. His automobile was driven to a police station and ultimately towed to a garage where it was searched after the defendant was booked. The respondent attempted to justify the search as incidental to a lawful arrest but the Supreme Court did not accept that argument. In Cady v. Dombrowski, 413 U. S. 433, 444, 93 S. Ct. 2523, 2529, 37 L. ed. 2d 706, 717 (1973), the Supreme Court limited Preston to that narrow issue in these words:

"* * * It would be possible to interpret *Preston* broadly, and to argue that it stands for the proposition that on those facts there could have been no constitutional justification advanced for the search. But we take the opinion as written, and hold that it stands only for the proposition that the search challenged there could not be justified as one incident to an arrest. See *Chambers v. Maroney, supra; Cooper v. California, supra.* We believe that the instant case is controlled by principles that may be extrapolated from *Harris v. United States, supra,* and *Cooper v. California, supra.*"

No claim is made in this case that the search was constitutionally valid because it was incidental to an arrest. Thus, Preston, as narrowed and limited by Dombrowski, is not persuasive.

Dombrowski points out that the ultimate standard set forth

in the Fourth Amendment to the Constitution of the United States is reasonableness and that there is general agreement that "except in certain carefully defined classes of cases, a search of private property without proper consent is unreasonable unless it has been authorized by a valid search warrant." That case also points out: "One of the class of cases which constitutes at least a partial exception to this general rule is automobile searches. Although vehicles are 'effects' within the meaning of the Fourth Amendment, * * * there is a constitutional difference between houses and cars." 413 U. S. 439, 93 S. Ct. 2527, 37 L. ed. 2d 713.

This case, then, presents one of the classes of cases referred to in Dombrowski—stripped of any issue as to the search being incident to an arrest. The only issue then is whether the search was reasonable under the facts and circumstances of this case.

The Dombrowski case, while not factually identical to this instant case, has many similar aspects. The defendant Dombrowski, following a one-car accident, was arrested for drunken driving. The police had the car towed to a garage 7 miles from the police station where it was left unguarded. The next day an officer, looking for a revolver which the defendant was thought to possess, made a warrantless search of the car and found in the trunk several items, some bloodied, which he seized. The Supreme Court held that the search was not unreasonable since the police had exercised a form of custody of the car, which constituted a hazard on the highway, the disposition of which by defendant was precluded by his intoxication and later comatose condition, and the revolver search was standard police procedure to protect the public from a weapon's falling into improper hands. The police in both Dombrowski and the instant case took custody of the car, and in neither case was the owner in a position to exercise control over the car. In both cases, the search was the end product of a standard operating procedure.

While the protection of the contents of the car, and of the city against claims, might in the abstract have been accomplished by "less intrusive" means, we cannot say the standard procedure

used was unreasonable. The vehicle here, as in Dombrowski, was vulnerable to intrusion by vandals if left on the street. If the city impounded the car, it could be subjected to claims that personal property in the vehicle was stolen while in the city's custody.

In Harris v. United States, 390 U. S. 234, 88 S. Ct. 992, 19 L. ed. 2d 1067 (1968), the United States Supreme Court held that police conduct which protected an impounded vehicle was reasonable. In that case defendant's car was impounded and towed to the police station after he had been arrested for robbery. A police department regulation required that an impounded vehicle be searched and valuables removed for storage. During the course of the procedure, an officer discovered evidence in plain view when he opened the passenger door to roll up the window and lock the door. The court did not have to reach the question of whether an inventory search was reasonable under the Fourth Amendment since the evidence was discovered not as a result of an inventory but by another measure taken to protect the car while in police custody, i.e., closing the windows and locking the doors. The court stated (390 U. S. 236, 88 S. Ct. 993, 19 L. ed. 2d 1069):

"The sole question for our consideration is whether the officer discovered the registration card by means of an illegal search. We hold that he did not. The admissibility of evidence found as a result of a search under the police regulation is not presented by this case. * * * [T]he discovery of the [registration] card was not the result of a search of the car, but of a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances."

Although Harris v. United States, supra, does not reach the precise issue here, it reasonably supports a conclusion that reasonable measures taken to protect property in a lawfully impounded vehicle are not unreasonable under the Fourth Amendment. This should include not only property discovered in plain

view, but all valuables within the vehicle. In Dombrowski, the court commented on the justification in Harris and Cooper for the initial intrusion as follows:

"In *Harris* the justification for the initial intrusion into the vehicle was to safeguard the owner's property, and in *Cooper* it was to guarantee the safety of the custodians. Here the justification, while different, was as immediate and constitutionally reasonable as those in *Harris* and *Cooper:* concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle." 413 U. S. 447, 93 S. Ct. 2531, 37 L. ed. 2d 706.

The majority of jurisdictions which have considered this question agree that an inventory search is not unreasonable under the Fourth Amendment.[3]

We are aware that there is a potential for abuse by the police of the inventory procedure. An exploratory search for evidence may be conducted under the pretext of inventorying the contents of an impounded vehicle. We do not believe, however, that the potential danger of illegal searches conducted under the pretext of an inventory is sufficiently great to prohibit all inventories of impounded vehicles. The police will generally be able to justify an inventory when it becomes essential for them to take custody of and responsibility for a vehicle due to the incapacity or absence of the owner, driver, or any responsible passenger. In

---

[3] United States v. Mitchell, 458 F. 2d 960 (9 Cir. 1972); United States v. Pennington, 441 F. 2d 249 (5 Cir. 1971); United States v. Gerlach, 350 F. Supp. 180 (E. D. Mich. 1972); People v. Sullivan, 29 N. Y. 2d 69, 272 N. E. 2d 464, 323 N. Y. S. 2d 945 (1971), reversing, 35 A. D. 2d 690, 315 N. Y. S. 2d 274 (1970); State v. Raiford, 7 Ore. App. 302, 490 P. 2d 1036 (1971); Cabbler v. Commonwealth, 212 Va. 520, 184 S. E. 2d 781 (1971); Warrix v. State, 50 Wis. 2d 368, 184 N. W. 2d 189 (1971); State v. Wallen, 185 Neb. 44, 173 N. W. 2d 372 (1970); Godbee v. State, 224 So. 2d 441 (Fla. App. 1969); State v. Criscola, 21 Utah 2d 272, 444 P. 2d 517 (1968); State v. Montague, 73 Wash. 2d 381, 438 P. 2d 571 (1968); St. Clair v. State, 1 Md. App. 605, 232 A. 2d 565 (1967); Heffley v. State, 83 Nev. 100, 423 P. 2d 666 (1967).

the case of an arrest, it must be shown that the arrest or arrests themselves were proper. In the present case, the police became responsible for the car when defendant and his passengers were placed under arrest. The record does not show that these arrests were merely a pretext to enable the officers to search the car.

In reaching our decision, we are not unmindful of the minority of jurisdictions which have reached an opposite result.[4] It is reasoned that the inventory procedure does not prevent a person from submitting an unfounded claim of loss or an unscrupulous police officer from simply not listing items of value. Boulet v. State, 17 Ariz. App. 64, 495 P. 2d 504 (1972). We cannot agree with this reasoning. The police could be held responsible if valuables in a car under its control were stolen. Removal of these valuables for storage in the police property room removes most of this risk. In addition, an inventory, while not a guarantee against unfounded claims of loss, is evidence the police can use to establish that a claim is false. We hold that preimpoundment inventory searches of automobiles are not constitutionally impermissible under the facts and circumstances in this case.

Defendant also contends on this appeal that the evidence does not sustain his conviction for simple assault. We need only point out that the observation of three police officers that defendant cocked his arm, formed a fist, and swung at one of the officers, although contradicted by other testimony of defendant, was sufficient to support a verdict of guilty.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[4] Boulet v. State, 17 Ariz. App. 64, 495 P. 2d 504 (1972); Mozzetti v. Superior Court of Sacramento County, 4 Cal. 3d 699, 484 P. 2d 84, 94 Cal. Rptr. 412 (1971). See, Embree v. State, 488 P. 2d 588 (Okla. Crim. App. 1971), Mayfield v. United States, 276 A. 2d 123 (D. C. App. 1971).