*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0416**

State of Minnesota,
Respondent,

vs.

Faith Annette Jenson,
Appellant.

**Filed February 29, 2016
Affirmed
Reilly, Judge**

Ramsey County District Court
File No. 62-CR-13-6737

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, G. Tony Atwal, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Chutich, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges her conviction of first-degree controlled-substance crime following a proceeding conducted under Minn. R. Crim. P. 26.01, subd. 4, to obtain review of a pretrial ruling. She argues that the district court erred by denying her motion to

suppress evidence discovered during a warrantless vehicle search and that she was denied a fair trial during the rule 26.01 proceeding. We affirm.

## FACTS

Appellant Faith Annette Jenson was charged with first-degree controlled-substance crime (sale of methamphetamine) and second-degree controlled-substance crime (possession of methamphetamine) following a vehicle impoundment and inventory search. She moved for suppression of the evidence discovered during the search. At the suppression hearing, Sergeant Kevin Navara of the Ramsey County Sheriff's Office testified that the following events occurred.

On June 6, 2013, Sergeant Navara received a tip from a confidential informant that Jenson was staying at a hotel in White Bear Lake. Sergeant Navara discovered that Jenson had two outstanding arrest warrants for felony-level controlled-substance crimes. He and three other officers went to the hotel and saw Jenson carrying things from the hotel to a vehicle in the hotel parking lot. The officers approached her, informed her that she was under arrest, and placed her in handcuffs. Because there was not a female officer on the scene to conduct a pat down, Sergeant Navara asked Jenson whether there was "anything on her that would [be] of concern to [the officers]." Jenson's handcuffs were temporarily removed, and she produced $993 from her bra.

Sergeant Navara then advised Jenson that the vehicle would be towed. He testified that he decided to have the vehicle towed because "Jenson wouldn't be returning to the car," she "couldn't prove ownership of the car," and:

2

The car was not in her name. Her explanation of why she owned the car was she bought it from a guy, didn't tell me the guy's name, couldn't tell me where. There was no bill of sale, no title. She didn't have a valid license, and I don't believe we saw any insurance in the car as well.

Sergeant Navara further testified:

I couldn't establish whose car it was.

. . . .

We had run the car plates, and I believe it came back to us it was a Hispanic gentleman. But based on what she told me, that she bought the car on the side of the road, had no proof, no title, we couldn't really establish ownership of that car at all.

Sergeant Navara testified that Jenson did not "attempt to make any alternate arrangements for the vehicle" and that "my guess would be the hotel wouldn't want [the vehicle] sitting there for multiple days." He admitted that hotel employees did not ask that the vehicle be towed, that Jenson had paid to stay at the hotel until the following day, June 7, and that Jenson was not asked or given an opportunity to arrange for someone to pick up the vehicle. Sergeant Navara testified that whether the sheriff's office has a vehicle towed "depends on the situation at hand" and that the vehicle would not have been towed "[i]f [Jenson] could prove ownership, a valid driver name, somebody we knew, family member, something to that effect that was coming back."

Sergeant Navara searched the vehicle before it was towed and discovered "ecstasy[,] . . . marijuana, oxycodone tablets, Percocet," and "a little over 19 grams of methamphetamine." He also discovered a scale, "baggies that were torn apart," and "some glass bubbles . . . commonly used for smoking methamphetamine."

3

Jenson testified at the suppression hearing that she had purchased the vehicle, was in the process of transferring title to the vehicle, had the title document, and showed that document to the officers. She also testified that she "asked [the officers] if [she] could leave [the vehicle] there" and that she was not given an option or opportunity to arrange for someone to pick up the vehicle.

The district court denied Jenson's suppression motion. The court determined that the vehicle impoundment and inventory search were justified because Jenson was taken into custody and there was no other person available to assume responsibility of the vehicle.

When the parties appeared for trial, defense counsel informed the district court, "It is my client, Ms. Jenson's, intent to stipulate to the State's facts as a *Lothenbach* stipulation and to preserve the *Rasmussen* issue that was previously heard in this matter for appellate review." The district court confirmed with Jenson that she wished to waive her right to a jury trial, "enter a *Lothenbach* plea," and "admit that the State ha[s] evidence sufficient to convict" because "there is an appellate issue that is dispositive in this case." Jenson agreed to the district court's statement that "what is going on here, is you are pleading guilty for purposes essentially that all of those facts will be established that you will plead guilty to and then this case will go up on appeal." Defense counsel then confirmed with Jenson that she was "not pleading guilty this morning" but was "agreeing to the State's case and that we are going to submit that evidence, based on the State's case, to the judge to determine whether or not that evidence meets the elements of a first or second degree charge of violation of the controlled substance law."

4

The prosecutor submitted the state's evidence, consisting of Sergeant Navara's incident report and a forensic report that identified the controlled substances discovered in the vehicle. Based on this evidence and the findings of fact contained in the suppression order, the district court found Jenson guilty of first-degree controlled-substance crime (sale of methamphetamine). The state then dismissed the charge of second-degree controlled-substance crime (possession of methamphetamine). Jenson filed this appeal following sentencing.

## D E C I S I O N

### I.

Jenson argues that the district court erred by denying her suppression motion. When reviewing a pretrial ruling on a motion to suppress evidence, an appellate court "review[s] the facts to determine whether, as a matter of law, the [district] court erred when it failed to suppress the evidence." *State v. Flowers*, 734 N.W.2d 239, 247 (Minn. 2007). The district court's factual findings are reviewed for clear error, and legal determinations are reviewed de novo. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011). A district court's ultimate ruling on a constitutional question involving a search or seizure is reviewed de novo. *State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007).

The United States and Minnesota Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "'[A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *State v. Johnson*, 813 N.W.2d 1, 14 (Minn. 2012) (quoting *Schneckloth v.*

5

*Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973) (quotation omitted)). An inventory search of a vehicle is one exception to the warrant requirement. *State v. Rohde*, 852 N.W.2d 260, 263 (Minn. 2014) (quoting *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987)). "[A]n inventory search conducted pursuant to a standard police procedure prior to lawfully impounding an automobile is not unconstitutional under the Fourth Amendment." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

## A. Impoundment

"[T]he threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper." *Id.*; *see also Rohde*, 852 N.W.2d at 264 (stating that "if the impoundment was unreasonable, then the resulting search was also unreasonable"). "An impoundment is reasonable if the state's interest in impounding outweighs the individual's Fourth Amendment right to be free of unreasonable searches and seizures." *Rohde*, 852 N.W.2d at 264 (quotation omitted). The police have the authority to impound a vehicle not only if it is "impeding traffic or threatening public safety and convenience," but also "to protect the defendant's property from theft and police from claims arising therefrom." *Id.* at 265 (quotations omitted). Under this caretaking authority, "the police will generally be able to justify an inventory when it becomes essential for them to take custody of and responsibility for a vehicle due to the incapacity

or absence of the owner, driver, or any responsible passenger." *Gauster*, 752 N.W.2d at 505 (quotation omitted).[1]

"[I]f the defendant assumes responsibility for his property, there is no need for the police to take on the responsibility to protect it," but "the need for the police to protect the vehicle and its contents is often present when police officers arrest a driver." *Id.* at 505-06 (concluding that there was no legitimate purpose for impoundment when defendant was not under arrest, "never relinquished control of his vehicle and had no need to leave it unattended," and "was available to take custody of the vehicle and make proper arrangements").

> [C]ases in which the driver of a vehicle is arrested are fundamentally different from cases in which the driver remains free. When the driver is arrested, it may be necessary to do *something* with the vehicle; in those cases, the police have a reason to take responsibility for the vehicle. On the other hand, when the driver is not arrested, it is not necessary for the police to take the vehicle into custody in the first place.

*Rohde*, 852 N.W.2d at 266 (quotations and citations omitted) (concluding that it was unnecessary for police to impound vehicle when defendant was not under arrest and "was present and retained control" of vehicle).

---

[1] The state seems to argue that reasonable suspicion that a vehicle contains contraband also justifies an impoundment and inventory search of the vehicle. Caselaw has not recognized reasonable suspicion of contraband as a valid basis to impound and inventory a vehicle. *Probable cause* that a vehicle contains contraband does justify a search of a vehicle without a warrant. *Flowers*, 734 N.W.2d at 248. The state did not argue in district court, and has not argued on appeal, that the officers had probable cause to believe that the vehicle contained contraband.

In this case, the vehicle was lawfully parked in the hotel parking lot and was not impeding traffic or threatening public safety or convenience. But Jenson was being taken into custody on two felony warrants, and the vehicle would be left unattended for an unknown duration. No arrangement was made for someone to pick up the vehicle for Jenson. Jenson argues that "[Sergeant] Navara never gave [her] any opportunity to make arrangements for someone else to drive the vehicle." But the United States Supreme Court has held that law enforcement is "not required to offer an arrested driver an opportunity to make alternative arrangements" before impounding a vehicle. *See id.* (citing *Bertine*, 479 U.S. at 373-74, 107 S. Ct. at 742); *see also Gauster*, 752 N.W.2d at 507-08 (discussing *Bertine*'s "reject[ion of] the assertion that the police should have, on their own, offered the defendant the opportunity to make his own arrangements" for the vehicle). While the Minnesota Supreme Court has indicated that a defendant should be permitted to make an arrangement for a vehicle if the defendant "specifically makes a request to do so," *Gauster*, 752 N.W.2d at 507-08, the record does not reflect that Jenson asked to make an arrangement for someone to pick up the vehicle.

Jenson contends that she "assumed responsibility" for the vehicle when she asked that it be left in the parking lot. However, the supreme court, when analyzing whether someone assumed responsibility for a vehicle, has focused on whether someone was present and in control of the vehicle or the vehicle would be left unattended. *See, e.g.*, *Rohde*, 852 N.W.2d at 266 (stating that defendant maintained responsibility for the vehicle when she was not under arrest and "was present and retained control" of vehicle); *Gauster*, 752 N.W.2d at 506 (stating that defendant took responsibility for vehicle when he was not

8

under arrest and "never relinquished control of his vehicle and had no need to leave it unattended"); *State v. Robb*, 605 N.W.2d 96, 104 (Minn. 2000) (concluding that impoundment of vehicle would not have been proper where "[defendant]'s friend, a licensed driver, was at the scene and willing to take responsibility"). Here, Jenson could not maintain control of the vehicle because she was being taken into custody. There was no arrangement for someone else to take control of the vehicle, and the vehicle would be left unattended.

Jenson points out that she had paid to stay at the hotel until June 7, and she contends that the vehicle should have been left in the hotel parking lot at least through June 7 or until hotel employees requested that the vehicle be towed. We note that federal circuit courts have upheld impoundments of vehicles parked not only in public areas, but also in private parking lots. *See, e.g.*, *United States v. Hood*, 183 F.3d 744, 746 (8th Cir. 1999) (rejecting argument that officers could not order tow of vehicle because vehicle was parked in private lot); *United States v. Ramos-Morales*, 981 F.2d 625, 626 (1st Cir. 1992) (reviewing federal caselaw and stating that federal circuit courts "have found that the police may lawfully impound a vehicle that would otherwise remain on the side of a public highway or city street or in a private parking lot" (citations omitted)). And the Minnesota Supreme Court has stated that while "police could lock up [an unattended vehicle] and thus to some extent protect its contents[, t]his procedure would not necessarily protect the police or the city from claims" if the vehicle is vandalized or property inside the vehicle is stolen. *City of St. Paul v. Myles*, 298 Minn. 298, 300, 218 N.W.2d 697, 698-99 (1974) (concluding that impoundment of vehicle was reasonable where driver and passengers were under arrest,

9

owner was not present, and vehicle would be left unattended on side of roadway). Moreover, if a vehicle is left unattended and vulnerable to intrusion initially and is impounded later, "the city . . . could be subjected to claims that personal property in the vehicle was stolen while in the city's custody." *Id.* at 303, 218 N.W.2d at 700.

Sergeant Navara testified that his decision to have the vehicle towed was also based on his inability to establish ownership of the vehicle and Jenson's suspicious explanation about how she came to possess the vehicle. In *State v. Goodrich*, the defendant was arrested for driving under the influence, the vehicle was not registered to the defendant, and the vehicle was impounded and searched even though the defendant's brother and mother were on the scene and able to take responsibility for the vehicle. 256 N.W.2d 506, 508 (Minn. 1977). The supreme court held that the impoundment and search were unreasonable because the defendant had arranged for his brother or mother to pick up the vehicle. The court stated that "[t]he mere fact that the automobile was not registered to defendant, in the absence of reason to believe that defendant was wrongfully in possession of it, does not render impoundment reasonable." *Id.* at 511. In this case, Sergeant Navara testified that, not only was Jenson not the vehicle's registered owner, but she also did not have a bill of sale for the vehicle and she explained how she came to possess the vehicle by stating that "she bought it from a guy" who she did not name "on the side of the road." These circumstances and the fact that there was no one present who could take responsibility for the vehicle differentiate this case from *Goodrich*.

"Impoundment of a motor vehicle must also be conducted pursuant to standardized criteria." *Gauster*, 752 N.W.2d at 503. The district court received into evidence a copy of

10

the sheriff's office "Vehicle Towing and Release Policy," which contains a provision on towing at arrest scenes, providing:

> Whenever a person in charge or in control of a vehicle is arrested, it is the policy of this Office to provide reasonable safekeeping by towing the arrestee's vehicle subject to the exceptions described below. However, a vehicle shall be towed whenever it is needed for the furtherance of an investigation or prosecution of the case, or when the community caretaker doctrine would reasonably suggest that the vehicle should be towed. For example, the vehicle would present a traffic hazard if not removed, or the vehicle is located in a higher-crime area and susceptible to theft or damage if left at the scene.
>
> The following are examples of situations where consideration should be given to leaving a vehicle at the scene in lieu of towing, provided the vehicle can be lawfully parked and left in a reasonably secured and safe condition:
>
> - Traffic-related warrant arrest.
> - Situations where the vehicle was not used to further the offense for which the occupant was arrested nor may be subject to forfeiture proceedings.
> - Whenever the vehicle otherwise does not need to be stored and the person in charge of the vehicle requests that it be left at the scene.

Jenson argues that the impoundment contradicted this policy because the vehicle "was lawfully and securely parked in the hotel parking lot, . . . it was not used to further the offense for which she was arrested[,] . . . and she requested that the vehicle be left parked in the secured parking lot." The policy provides that "[w]henever a person in charge or in control of a vehicle is arrested, it is the policy of this Office to provide reasonable safekeeping by towing the arrestee's vehicle" and then provides "examples of situations" where officers may decide not to have a vehicle towed. An impoundment policy may

11

permit law enforcement to exercise discretion. *See Bertine*, 479 U.S. at 375-76, 107 S. Ct. at 743 (rejecting argument "that [an] inventory search of [a] van was unconstitutional because departmental regulations gave the police officer discretion to choose between impounding [the] van and parking and locking it in a public parking place"). Although Jenson requested that the vehicle be left in the hotel parking lot, she was under arrest, and Sergeant Navara could not ascertain whether she was rightfully in charge of the vehicle. Sergeant Navara acted in accordance with the policy by having the vehicle towed for safekeeping.

Given the circumstances here, we hold that the impoundment was a reasonable exercise of the caretaking authority to protect the vehicle and its contents and to protect the sheriff's department from potential claims. Jenson was under arrest, there was no arrangement for someone to take control of the vehicle, the vehicle would be left unattended, and ownership of the vehicle could not be ascertained. The impoundment was a reasonable seizure under the Fourth Amendment.

**B.     Inventory search**

Following a valid impoundment, law enforcement officers conduct a permissible inventory search if "they (1) follow standard procedures in carrying out the search and (2) perform the search, at least in part, for the purpose of obtaining an inventory and not for the sole purpose of investigation." *State v. Ture*, 632 N.W.2d 621, 628 (Minn. 2001); *see also State v. Holmes*, 569 N.W.2d 181, 187 (Minn. 1997) (stating that "standard procedure[s] . . . ensure that the intrusion will be limited in scope to the extent necessary" to secure and protect vehicles and their contents (quotation omitted)). The sheriff's office

"Vehicle Towing and Release Policy" provides: "All property of value in stored or impounded vehicles shall be inventoried and listed on the vehicle storage form. This includes the trunk and any compartments or containers, even if closed and/or locked." Sergeant Navara was searching the vehicle to list property of value on an inventory form when he discovered a suitcase that contained controlled substances and drug paraphernalia.

Jenson argues that the "inventory search had solely an investigative purpose," pointing to the facts that she was being arrested on warrants for controlled-substance crimes and that she had a large amount of cash on her person. But "the police will generally be able to justify an inventory when it becomes essential for them to take custody of and responsibility for a vehicle due to the incapacity or absence of the owner, driver, or any responsible passenger." *Gauster*, 752 N.W.2d at 505 (quotation omitted). The district court credited the state's evidence that the decision to have the vehicle impounded and inventoried "was a consequence of the facts that [Jenson] was being taken into custody and there was no one else available to assume responsibility for the car." *See State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012) (stating that this court defers to a district court's credibility determinations when reviewing a pretrial order on a motion to suppress evidence). And the sheriff's office policy mandates an inventory when a vehicle is impounded "for the purpose of protecting an owner's property, while in the Sheriff's Office custody, to provide for the safety of deputies and the public, and to protect the Sheriff's Office against fraudulent claims of lost, stolen or damaged property." The record supports a conclusion that the inventory search was performed, "at least in part, for the purpose of

13

obtaining an inventory and not for the sole purpose of investigation." *See Ture*, 632 N.W.2d at 628.

The inventory search was proper under the circumstances of this case. Because the impoundment and inventory search of the vehicle fell under an exception to the warrant requirement and were not unconstitutional, the district court did not err by denying Jenson's suppression motion.

**II.**

Jenson argues that the rule 26.01 proceeding "was error-riddled, failed to comply with Minn. R. Crim. P. 26.01, subd. 4, and violated her constitutional right to a fair and impartial trial." Jenson did not object to the proceeding, and an appellate court generally will not consider errors that were not objected to in district court. *See State v. Myhre*, ___ N.W.2d ___, ___, No. A14-0670, slip op. at 8 (Minn. Feb. 17, 2016). But an appellate court may review an unobjected-to error under plain-error analysis, and the supreme court recently held "that plain error analysis applies to unobjected-to errors committed under Rule 26.01, subdivision 4." *Id.* at 9, 11. "In order to meet the plain error standard, a criminal defendant must show that (1) there was an error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *Id.* at 9. "If the first three prongs are satisfied, [the appellate court] must consider a fourth factor, whether [the court] should address the error to ensure fairness and the integrity of the judicial proceedings." *Id.* (quotation omitted).

An error is plain if it is clear or obvious in that "it contravenes case law, a rule, or a standard of conduct." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014) (quotation omitted). Under Minn. R. Crim. P. 26.01, subd. 4:

> (a) When the parties agree that the court's ruling on a specified pretrial issue is dispositive of the case, or that the ruling makes a contested trial unnecessary, the following procedure must be used to preserve the issue for appellate review.
>
> (b) The defendant must maintain the plea of not guilty.
>
> (c) The defendant and the prosecutor must acknowledge that the pretrial issue is dispositive, or that a trial will be unnecessary if the defendant prevails on appeal.
>
> (d) The defendant, after an opportunity to consult with counsel, must waive the right to a jury trial . . . , and must also waive the rights [to testify at trial, have the prosecution witnesses testify in open court in the defendant's presence, question the prosecution witnesses, and require any favorable witnesses to testify for the defense in court].
>
> (e) The defendant must stipulate to the prosecution's evidence in a trial to the court, and acknowledge that the court will consider the prosecution's evidence, and that the court may enter a finding of guilty based on that evidence.
>
> (f) The defendant must also acknowledge that appellate review will be of the pretrial issue, but not of the defendant's guilt, or of other issues that could arise at a contested trial.
>
> (g) The defendant and the prosecutor must make the preceding acknowledgments personally, in writing or on the record.
>
> (h) After consideration of the stipulated evidence, the court must make an appropriate finding, and if that finding is guilty, the court must also make findings of fact on the record or in writing as to each element of the offense(s).

*See also State v. Knoll*, 739 N.W.2d 919, 921-22 (Minn. App. 2007) (citing *State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980)) (stating that rule 26.01, subdivision 4, provides procedure for what are known as "*Lothenbach* trials").

On the day of trial, the parties agreed that the district court's suppression ruling was dispositive of the case. Jenson affirmed with defense counsel her understanding that she was not pleading guilty. She affirmed that she had consulted with defense counsel and wished to waive her rights to a jury trial, to testify at trial, to cross-examine the state's witnesses, and to present defense witnesses. Jenson agreed to the presentation of the state's evidence to the district court and acknowledged that the court could convict her based on that evidence. She acknowledged her understanding that the suppression ruling would be reviewed on appeal.

The prosecutor submitted Sergeant Navara's incident report and a forensic report to the district court. The evidence indicated that Jenson had $993 on her person when she was arrested and that substances discovered in the vehicle were identified as "1.53 grams of [m]arijuana, 33 pills of Percocet[,] 2 pills of Oxycontin," and 19.27 grams of methamphetamine. The evidence also indicated that a scale, numerous empty baggies, three cellular phones, and "glass bubble pipes consistent with smoking meth" were discovered in the vehicle. The district court stated that, based on the incident and forensic reports and the findings of fact contained in the suppression order, Jenson was guilty of first-degree controlled-substance crime (sale of methamphetamine).

Jenson argues that the proceeding was "error-riddled" by pointing to misstatements made by defense counsel and the district court. However those misstatements were

16

corrected on the record. Defense counsel erred by initially informing the district court that Jenson would "stipulate to the State's facts." Defense counsel and the district court later clarified that Jenson was stipulating to the state's evidence, and that evidence was submitted to the court. The district court erred by indicating that Jenson was pleading guilty. Defense counsel then clarified with Jenson that she was not pleading guilty, and the district court stated that it found Jenson guilty based on the evidence and facts in the record. Even if these errors had not been corrected, the supreme court recently explained that it has "never required strict compliance with the provisions of either Rule 26.01, subdivision 4, or *Lothenbach*" and that it has "allowed multiple convictions to stand . . . despite reliance on flawed attempts to comply with either Rule 26.01, subdivision 4, or the *Lothenbach* procedure." *Myhre*, slip op. at 6–8 (reviewing cases where convictions were upheld following *Lothenbach* trials even though defendants pleaded guilty rather than not guilty or stipulated to facts rather than to the state's evidence).

Jenson also argues that the fact that the state dismissed the charge of second-degree controlled-substance crime (possession of methamphetamine) after the district court found her guilty of first-degree controlled-substance crime (sale of methamphetamine) indicates that her "trial . . . was essentially a negotiated guilty plea." But Jenson could not have been convicted of both crimes, so it was proper that the lesser crime be dismissed. *See* Minn. Stat. § 609.04, subd. 1 (2012) (stating that "[u]pon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both" and defining "included offense" to encompass "[a] lesser degree of the same crime" and "[a] crime necessarily proved if the crime charged were proved").

17

The rule 26.01 proceeding followed the procedure under rule 26.01, subdivision 4, and Jenson has not shown plain error. And even if Jenson could show plain error, she has not shown that her substantial rights were affected. The district court found her guilty based on the evidence and facts in the record, and she received appellate review of the pretrial ruling as intended by the parties. *See Myhre*, slip op. at 15–16 (stating that defendant's substantial rights were not affected by plain error during rule 26.01 proceeding because district court reviewed stipulated facts and made independent determination of guilt).

**Affirmed.**