*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0930**


State of Minnesota,
Respondent,

vs.

Joshua Brandon Cochran,
Appellant.


**Filed May 2, 2016
Reversed
Halbrooks, Judge**


Dakota County District Court
File No. 19HA-CR-14-2191

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, G. Paul Beaumaster, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and

Toussaint, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his convictions of first-degree controlled-substance sale, first-degree controlled-substance possession, and fifth-degree controlled-substance possession, arguing that the district court erred by refusing to suppress the drugs found inside a vehicle as a result of an improper inventory search. He also asserts, in the alternative, that the two possession counts must be vacated because they are included offenses of the first-degree controlled-substance-sale conviction. Because we conclude that the vehicle impoundment and resulting inventory search were unlawful, we reverse.

## FACTS

On June 21, 2014, officers responded to what dispatch described as an accident in Eagan involving a motor vehicle and a pedestrian. The first officer to respond, Officer Letourneau, noticed a male, later identified as T.K., lying in a grassy area adjoining the road surrounded by a small group of people. After checking on T.K., Officer Letourneau pulled up behind the vehicle that had been involved in the incident. He identified the driver as appellant Joshua Brandon Cochran and the person in the front passenger seat as T.M. Cochran was bleeding from his nose.

According to Cochran, he borrowed the vehicle from his partner in North Dakota so that he could come to the Twin Cities to find his own car that had been taken by a former roommate. Cochran picked up the two passengers after meeting them online because he thought that one of them knew where his car was. At some point, an argument erupted between T.K. and Cochran over methamphetamine. T.K., who was in

the backseat, began punching Cochran in the head and face while Cochran was driving. Cochran stopped the vehicle and got out to escape being punched in the head. T.K. followed him. When Cochran got back into the vehicle, T.K. jumped on the hood and began punching and pounding on the windshield. The incident report confirms that Cochran sustained injuries to his head, and photographs reflect what appear to be repeated punches to the upper corner of the driver's side windshield. T.K. testified that he did not recall how he sustained his injuries, but Cochran stated that when T.K. was on top of the hood, punching the windshield, Cochran got scared, shifted the vehicle into drive, and accidentally hit T.K. after T.K. fell off the vehicle.

All three men were treated for injuries at the scene and were ultimately transported to the hospital. No arrests were made. Before being taken to the hospital, Cochran requested that his cell phone be retrieved from the vehicle. Cochran testified that Officer Letourneau found the phone but did not return it to him.

Because Officer Letourneau decided to have the vehicle towed, he first performed an inventory search. While doing so, he found two small baggies containing what was later confirmed to be methamphetamine in a sunglasses case inside the center console of the vehicle. He also located a small personal safe in a bag on the passenger-side floor. Based on these discoveries, Officer Letourneau decided to have the vehicle towed directly to the police department instead of the impound lot. The following day, officers obtained a search warrant to open the safe. Inside, they found 50.6 grams of methamphetamine, numerous empty baggies, and a scale.

Dakota County charged Cochran with one count of first-degree controlled-substance sale and one count of first-degree controlled-substance possession. Cochran challenged the legality of the inventory search at a contested omnibus hearing and moved to suppress the drugs found as a result of the search. The district court denied his motion. On the first day of trial, the state moved to amend the complaint to add a third count of fifth-degree controlled-substance possession. The jury found Cochran guilty on all three counts. The district court granted Cochran's motion for a downward dispositional departure and sentenced him to 75 months with execution stayed subject to five years of probation. This appeal follows.

## DECISION

Cochran argues that the district court erred by denying his motion to suppress the drugs found in the vehicle as a result of the inventory search on the ground that the vehicle impoundment was improper because he was not under arrest and was not given an opportunity to make arrangements for the vehicle. "When reviewing pretrial orders on motions to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007). "We may independently review facts that are not in dispute, and 'determine, as a matter of law, whether the evidence need be suppressed.'" *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992)).

The United States and Minnesota Constitutions prohibit unreasonable searches or seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches are

4

generally per se unreasonable, unless they fall within a recognized exception to the warrant requirement, *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001), and evidence obtained in violation of the Fourth Amendment is inadmissible, *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961).

"[I]nventory searches are now a well-defined exception to the warrant requirement . . . ," *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741 (1987), and "are considered reasonable because of their administrative and caretaking functions," *Gauster*, 752 N.W.2d at 502. They "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* (quotation omitted). But impoundment is proper only if the state's interest in impoundment outweighs a person's Fourth Amendment right to be free of unreasonable searches and seizures. *Id.* Therefore, the threshold question when determining the legality of the search is to decide whether the impoundment was proper. "[I]f the impoundment was unreasonable, then the resulting search was also unreasonable." *State v. Rohde*, 852 N.W.2d 260, 264 (Minn. 2014) (*Rohde II*).

The state argues that impoundment was necessary because (1) the vehicle was a safety hazard, (2) it was not legal to drive or operate, (3) Cochran was incapacitated and unavailable to make arrangements to have the vehicle towed, and (4) it was evidence in an ongoing investigation. We will address each element in turn.

*Safety Hazard*

Cochran argues that the district court erred by finding that the vehicle could not remain where it was because it was illegally parked and impeding traffic. An officer may

5

impound a vehicle if he believes that the public is put at risk "when there has been a vehicle accident, to permit the uninterrupted flow of traffic, or when vehicles have violated parking ordinances and thus jeopardize the public safety and the efficient movement of traffic." *Id.* at 265.

The district court relied on Officer Letourneau's testimony and its own review of the squad-car videos to find that the vehicle's position on the shoulder of the road created a safety hazard.[1] Our review of the squad-car videos does not support this finding. Officer Letourneau's squad-car video shows that the rear tire on the driver's side extended over the white fog line on the shoulder by a matter of inches. But the road is very wide, and even with the driver's door fully open, as it was during the investigation, the videos reflect that other vehicles were able to drive past the accident scene from both directions with wide clearance.

Officer Letourneau testified that vehicles had to "serpentine through both lanes of traffic to get through" the area. But the videos reflect that traffic flowed at normal speeds even with three squad cars and an ambulance parked on the road. The videos also reflect that if any passing traffic had to slow, it was more likely due to Officer Letourneau's squad car, which extended much further into the traffic lane than Cochran's. Cochran's vehicle was pulled over to the side of a residential street and was not interfering with traffic or blocking access to any property. Therefore, the district court's finding that the vehicle constituted a safety hazard or was impeding traffic in such a manner as to justify impoundment is clearly erroneous.

---

[1] Three separate squad-car videos are included in the record.

The district court also denied Cochran's motion to suppress the drugs on the ground that the vehicle was illegally parked.[2] The record does not support a conclusion that Cochran's vehicle violated any parking restrictions. Officer Letourneau testified that the area "is highly residential adjacent to commercial," but he had no knowledge of whether this area was a restricted parking zone. He noted, "I'm not sure if it's posted with signs or not" and "I don't believe it's a parking zone but I could not tell you right off the top of my head." No investigation was done to determine whether a vehicle left there would have been in violation of parking restrictions. Because Officer Letourneau's testimony does not support the conclusion that the vehicle was illegally parked and a review of the squad-car video shows no signage in the area restricting parking, we conclude that the district court's finding that Cochran's vehicle was illegally parked is clearly erroneous.

*Illegal to Drive or Operate*

Cochran argues that the district court erred by finding that impoundment was necessary due to the damage to the windshield that obscured a driver's ability to see. A driver is prohibited from driving any vehicle with "a windshield cracked or discolored to an extent to limit or obstruct proper vision." Minn. Stat. § 169.71, subd. 1(a)(1) (2014). The Eagan Police Department operating manual authorizes an officer to tow or impound a vehicle if it "is found being driven on the street and is not in proper condition to be

---

[2] The district court made no formal findings on the matter but provided only a recitation of Officer Letourneau's testimony.

driven" or "is involved in a motor vehicle accident and is inoperable, causing a traffic obstruction."

The district court found that "[t]he vehicle was not safe or legal to drive away because of the extensive damage to the windshield." But even if the windshield damage would have rendered the vehicle statutorily inoperable, the supreme court has clearly stated that the threshold for impoundment is not whether the offense violated Minnesota law. Even if an officer is otherwise statutorily authorized to impound the vehicle, a "focus on whether the impoundment was authorized by Minnesota law is misplaced, because the real question in this case is whether the impoundment was reasonable *under the Fourth Amendment*." *Rohde II*, 852 N.W.2d at 264. This is true because "a state statute [or ordinance] might authorize an unreasonable search." *Id.* Therefore, simply because the Eagan Police Department manual authorizes impoundment under such circumstances does not mean that it forms the proper foundational inquiry.[3]

In balancing the state's interest in impounding for reasons of public safety against Cochran's Fourth Amendment rights, we conclude that the district court erred by determining that the impoundment was necessary to prevent the vehicle from being driven from the scene in the absence of any evidence indicating that this was Cochran's plan.

---

[3] We note that the portion of the Eagan Police Department manual in the record relies on statutory authority that was repealed at the time Dakota County charged Cochran. Because Cochran does not raise the issue of whether the Eagan Police Department manual constituted proper standardized criteria with which to impound a vehicle, we decline to address it here. *See Gauster,* 752 N.W.2d at 502 (holding that "an inventory search conducted pursuant to a standard police procedure prior to lawfully impounding an automobile [is] not unconstitutional under the Fourth Amendment" (quotation omitted)).

*Arrest, Absence, or Incapacitation of Driver*

The state argues that impoundment was necessary because there was no one to care for or make arrangements for the car. "The police will generally be able to justify an inventory when it becomes essential for them to take custody of and responsibility for a vehicle due to the incapacity or absence of the owner, driver, or any responsible passenger." *City of St. Paul v. Myles,* 298 Minn. 298, 304, 218 N.W.2d 697, 701 (1974).

The district court concluded that impoundment of Cochran's vehicle was necessary because "the owner was not present in Minnesota and there was no testimony that [Cochran] requested that the police notify the registered owner," noting that "[p]olice are not required to give a driver the opportunity to make arrangements, but may allow the driver to make reasonable alternative arrangements when the driver is able to do so and requests to do so." The district court relied on language from this court's decision in *State v. Rohde*, 839 N.W.2d 758 (Minn. App. 2013) (*Rohde I*), for the proposition that police may impound a vehicle unless the driver specifically requests that he be allowed to arrange for a tow of his vehicle.

But the supreme court overturned this court's decision in *Rohde I*, affirming the holding in *Gauster* that "cases in which the driver of a vehicle is arrested are fundamentally different from cases in which the driver remains free." *Rohde II*, 852 N.W.2d at 266. It is true that when a driver has been taken into custody, "it may [be] necessary to do *something* with the vehicle," but when a driver has not been arrested or is not incapacitated, "it is not necessary for the police to take [the] vehicle into custody in

9

the first place" in the interest of general caretaking. *Id.* (alterations in original) (quotations omitted).

Cochran contends that the state cannot rely on the general caretaking interest to justify the impoundment because he was neither incapacitated nor arrested. We agree. Cochran was not under arrest, nor was there any indication at that time that he would be arrested in connection with the accident. While it is true that Cochran never affirmatively asked Officer Letourneau if someone could come for the vehicle, Cochran testified that he asked the officer to retrieve his cell phone from the vehicle with the intent to call to arrange a tow: "[T]he reason why I asked for my phone was to be able to call the owner of the vehicle to have him come get the car." Officer Letourneau confirmed that Cochran asked him to retrieve his phone, but he disputed Cochran's statement that he never received it.

Nothing in the record other than Officer Letourneau's testimony after Cochran was charged indicates that Officer Letourneau honored Cochran's request and gave him his phone. A recorded exchange between Cochran and an officer during a follow-up interview taken at the hospital on the day of the accident confirms that Cochran was not given his phone. The incident report completed the day after the incident does not reflect that Cochran was given his phone. The record supports a conclusion that Cochran was attempting to make arrangements to have the vehicle towed but was not able to follow through with his intention due to the officer's intervening search of the vehicle.

When Cochran requested that his phone be retrieved, Officer Letourneau simultaneously began the inventory search. Police must have justification for the

10

impoundment at the time of impoundment. *Gauster*, 752 N.W.2d at 505. That did not occur here. Cochran told Officer Letourneau that his phone was in the "left-hand side board in the side compartment on the door." Officer Letourneau located and removed Cochran's phone and then opened the center console where he found a sunglasses case that he subsequently opened. Thus, the inventory search, done simultaneously with the request by Cochran to retrieve his phone, was unlawful in light of the fact that Cochran was not under arrest and was attempting to retrieve his phone before going to the hospital.

Officer Letourneau testified that impoundment was necessary because he had no way to positively identify the owner of the vehicle. But "[t]he mere fact that the automobile was not registered to defendant, in the absence of reason to believe that defendant was wrongfully in possession of it, does not render impoundment reasonable upon defendant's unrelated arrest . . . , and despite defendant's alternative arrangements for disposition of the automobile." *State v. Goodrich*, 256 N.W.2d 506, 511 (Minn. 1977). In this case, there was no effort made based on the VIN or license plate to identify the owner. At the omnibus hearing, the following exchange between Officer Letourneau and Cochran's attorney occurred:

> Q. First, you never asked Mr. Cochran if he wanted to arrange a tow for his own vehicle?
> A. No, I did not.
> Q. All right. You didn't ask him if he wanted to call someone else to come watch after his vehicle?
> A. No.
> Q. And you didn't ask him who the registered owner of the vehicle was?
> A. I do not recall if I did or not to be honest.

Q. But you never attempted to find any individual named [L.W.], correct?

A. I didn't have the ability at the time of the incident.

Q. And wouldn't a temporary registration and vin number give you information on who the actual owner of that vehicle was?

A. Sometimes it has limited information, yes.

Q. Uh, did you take a photograph of this temporary registration tab?

A. I do not recall.

Q. Okay. But it's—It's not in evidence here today. You don't have it today with you, do you?

A. No.

We find no authority for the proposition that an officer may use his discretion to preemptively determine whether it is reasonable or unreasonable for the driver of a vehicle to make arrangements for its removal from the scene. If this were the case, an officer could regularly bypass an individual's Fourth Amendment right to be free from unreasonable searches or seizures. The district court's conclusion that impoundment was proper because the registered owner was out of state is undercut by the fact that Cochran, as the driver of the car, was available and took affirmative steps to retrieve his phone in order to make arrangements for the vehicle.

The police may also justify impoundment of a vehicle under a general caretaking function if the driver is incapacitated.[4] *Gauster*, 752 N.W.2d at 505. The Eagan Police Department manual permits impoundment under the following circumstance: "A vehicle constitutes an obstruction to traffic and the vehicle is unattended or the person in charge of the vehicle is injured or incapacitated *to such an extent as to be unable to provide for*

---

[4] We have found no published authority detailing a *Gauster* analysis when a driver challenges impoundment based strictly on incapacity.

12

*its removal.*" (Emphasis added.) An "incapacitated person" is defined as "[a] person who is impaired by an intoxicant, by mental illness or deficiency, or by physical illness or disability *to the extent that personal decision-making is impossible*." *Black's Law Dictionary* 828 (9th ed. 2009) (emphasis added). There are no facts in the record to suggest that Cochran was incapacitated "to such an extent as to be unable to provide for [the vehicle's] removal."

*Evidence in an Ongoing Investigation*

Cochran argues that the district court erred by finding that the vehicle was properly impounded to preserve evidence in an ongoing investigation.[5] Vehicles may be taken into police custody "in some circumstances to preserve evidence." *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S. Ct. 3092, 3097 (1976). But the question of whether this was a reasonable inventory search depends on "whether, *at the time of the impoundment*, [Letourneau] was authorized to impound [Cochran's] vehicle." *Gauster*, 752 N.W.2d at 505.

The district court relied on Officer Letourneau's testimony that he "believed the vehicle may be evidence in an ongoing investigation." This means that the vehicle could only have been impounded in conjunction with the accident that led to the injuries. Any other criminal activity implicating Cochran was discovered as a result of the inventory search and cannot, therefore, be used as the basis for impoundment.

---

[5] Again, the district court recited Officer Letourneau's testimony but made no formal finding on the matter.

13

During the omnibus hearing after the discovery of the drugs, Officer Letourneau testified:

> At that point where it was parked at an angle in the roadway, being a traffic hazard, the damage to the wind shield, making it undriveable and we had no way to determine who—positively determine who the owner was, and *having the vehicle possibly be evidence of an assault with a vehicle or criminal vehicular operation*, it was determined the vehicle would be towed to make sure that if it was evidence while officers were at the hospital, making interviews, furthering the investigation that the vehicle could be secured.

(Emphasis added.) But the incident report does not state that Officer Letourneau was impounding the vehicle to preserve evidence of the accident or that Cochran was under investigation for criminal vehicular operation. In fact, the report states only that

> [k]nowing that [T.K.] was going to the hospital for his injuries, [T.M.] was going to the hospital for evaluation because his use of narcotics and Cochran was going to the hospital for evaluation of his injuries the vehicle needed to be towed that he was driving. I began to do an inventory search of the vehicle and to attempt to locate Cochran's phone.

Aside from the testimony at the omnibus hearing, there is no indication that Officer Letourneau conducted an inventory search to preserve evidence of the accident. The state maintains that "the crime for which the vehicle was suspected of being evidence was not drug related. Rather . . . it was believed the car was evidence in the assault of the individual that was on the side of the road." But at no point was Cochran treated as if he might be charged with a crime in connection with the accident. In fact, he never was charged with any crime related to the accident. He was at all times treated as the victim in the matter. The record does not support the conclusion that, at the time of

14

impoundment, the state had an overriding interest in preserving the vehicle as evidence of a crime that Cochran might be charged with.

Because we conclude that the impoundment was not justified or necessary, the inventory search violated Cochran's Fourth Amendment right against unreasonable searches or seizures. The suppression of the methamphetamine requires reversal of appellant's convictions, which were based on that evidence. *See generally State v. Harris*, 533 N.W.2d 35, 36 n.1 (Minn. 1995) (noting retrial barred following reversal for insufficient evidence). Because we reverse the convictions, we do not reach the issue of whether Cochran's possession convictions must be vacated as included offenses of the first-degree controlled-substance-sale conviction.

**Reversed.**